## FLAKE *v.* STATE.

### Opinion delivered May 21, 1923.

1. CRIMINAL LAW—ARGUMENTATIVE INSTRUCTIONS.—It is error for the court to give instructions argumentative in form, as it is not the function of the court to argue cases.

2. HOMICIDE—MANSLAUGHTER—INSTRUCTION.—An instruction, in a murder case, that if the defendant killed the deceased in the absence of premeditation, deliberation and malice, he must have killed him, in order to constitute manslaughter, from some overt act that deceased committed just before defendant struck the fatal blow, *held* not erroneous.

3. HOMICIDE—MANSLAUGHTER—INSTRUCTION.—In a murder case it was not error to charge that, if the killing was done because of the sense of wrong done to defendant's sister, the offense was not reduced to manslaughter if sufficient time had elapsed for the passion to subside, and that the offense was not manslaughter unless there was an overt act which so inflamed defendant's passion as to make the impulse to kill irresistible.

4. HOMICIDE—INSANITY—QUESTION FOR THE JURY.—The question whether defendant was insane *held,* under the evidence, to be a jury question.

5. CRIMINAL LAW—INSTRUCTION AS TO MATTER OF FACT.—Where the court, without any foundation therefor, asked defendant, accused of murder, in effect whether he remembered having feigned insanity and then instructed the jury to ascertain whether the defense of insanity was offered for the purpose of excusing alleged criminal acts and acquitting one charged with murder, the effect was to charge the jury in regard to matters of fact, which is forbidden by the Constitution.

Appeal from Faulkner Circuit Court; *George W. Clark,* Judge; reversed.

*R. W. Robins* and *R. G. Bruce,* for appellants.

The court erred in giving instruction number 4, and in refusing request of appellant to read to the jury §§ 2354, 2355, C. & M. Digest, defining manslaughter. 102 Ark. 180. Error was committed also in refusing appellant's requested instruction 18, and especially in giving instruction 10 after the court's questioning of defendant. It was a comment on the testimony. 51 Ark. 147; 110 U. S. 574, 28 L. ed. 262. The court erred in its refusal to permit counsel for appellant to say, in his opening statement to the jury, what he proposed to show in relation to mistreatment of his family by Wallace Wilson and as to occupation of Wilson. Court should not have thus indicated his view of the case to the jury. 43 Ark. 289; 45 Ark. 165; 133 Ark. 149; 123 Ark. 260; 55 Ark. 244.

*J. S. Utley,* Attorney General, *John L. Carter* and *Wm. T. Hammock,* Assistants, for appellee.

No error committed in giving instruction 4 and refusing to allow read to the jury §§ 2354, 2355, C. & M. Digest. Neither was there error in refusing appellant's requested instruction No. 18. The manner of the court's refusal to allow counsel for appellant to say what he intended to prove in his opening statement was not prejudicial. Instruction No. 10 was a correct statement of the law. 110 U. S. 574, 28 L. ed. 262, cited by appellant, not applicable. The evidence is sufficient to sustain the verdict.

SMITH, J. This is the second appeal in this case, and a summary of the testimony may be found in the former opinion. *Flake* v. *State,* 156 Ark. 34.

Practically the same testimony was offered at the second trial as in the first, there being testimony on behalf of defendant from which the jury could have found that defendant was insane, and that, if he did in fact kill the deceased, he did so in self-defense, or under circumstances which reduced the grade of the homicide to voluntary manslaughter. In accordance with our former opinion, instructions to the jury submitted all these

questions. Defendant was found guilty of murder in the second degree and given a sentence of twenty-one years in the penitentiary.

For the reversal of the judgment it is insisted that the court erred in interrupting defendant's counsel in the opening statement to the jury by holding that certain statements were incompetent. But the court later admitted this testimony, and we think that action cured the error of the first ruling.

Error is assigned in giving, over defendant's objection, an instruction numbered 4, which reads as follows: "Manslaughter is the unlawful killing of a human being, without malice, express or implied, and without deliberation. Then the distinguishing point between manslaughter and murder is the absence of malice, the absence of hatred, the absence of an act cruelly done, wickedly done, the absence of an act done without regard for the rights of a human being, and, in addition to that, it must be done upon a sudden heat of passion apparently sufficient to make the passion irresistible, hence it follows that, if the defendant killed the deceased Wallace Wilson, and he killed him in the absence of premeditation and deliberation, and in the absence of malice, he must have killed him, in order to constitute manslaughter, from some overt act that Wilson committed just before he struck the fatal blow. If he killed him because of any difference that had existed in the past, after which sufficient time had elapsed to give his passion time to subside, it would not be manslaughter, because it could not be the result of a sudden heat of passion."

The objection to the instruction is that the court told the jury there must have been some overt act on the part of the deceased, just before the defendant struck the fatal blow, to reduce the killing to manslaughter. Another objection to the instruction is that it is argumentative in form.

We dispose of this last objection first by saying that the instruction is argumentative in form, and ob-

jectionable on that account. This is a defect which ought never to exist, as it is not a function of the court to argue cases. The court should be content to declare the law applicable to the issues of the case, and leave the argument to the attorneys. But, while objectionable as being argumentative in form, we do not reverse the judgment on that account, as the instruction contains no expression of the court's opinion, and is a correct statement of the law under the issues joined, as will appear from our discussion of the first objection made to it.

The instruction was not objectionable in requiring the jury to find there was an overt act to constitute manslaughter. As appears from the former opinion, the defendant's chief defense was insanity, and that defense was chiefly relied upon at the second trial. The law of that subject was fully declared, in instructions to which no objections were made, and the jury was told to acquit the defendant if they found he was insane.

The instruction numbered 4 deals with the defense of justification and mitigation. The defendant testified that the deceased assaulted him, and thus so aroused his passion as to make the impulse to kill irresistible.

There was also testimony that, in defendant's unbalanced mental condition, he became insane by brooding over the wrongs done his sister by the deceased, her husband, one of these being he had suffered her to be ravished by his associate in the crime of making moonshine whiskey, and had made no effort to have the rapist answer for that crime before the law. So that it was not improper to tell the jury that, if the killing was done because of the sense of wrong, the offense was not reduced to manslaughter if sufficient time had elapsed for the passion to subside, and that the offense was not manslaughter unless there was an overt act which so inflamed defendant's passion as to make the impulse to kill irresistible.

There was another instruction which dealt with the right of self-defense, but, of course, the whole law of the case could not be declared in a single instruction.

It is insisted, for the reversal of the judgment, that the verdict was contrary to the evidence, in that the undisputed testimony shows the defendant was insane. We do not so interpret the testimony, for, while the jury might have found defendant was insane, this was not the only reasonable view of the testimony, considered in its entirety. Indeed, this was very properly a question for the jury, and there was testimony legally sufficient to support a finding that defendant was sane, or that he was insane.

The defendant was cross-examined at great length by the prosecuting attorney, and the court finally questioned him, and the following questions were asked and answers given in response to the interrogatories of the judge: "Q. George, did you use your team or your father's the next day after this trouble, when you were getting worried over there? A. I don't know. Q. You did buy a team from him? A. I don't know that. Q. When you went back to the house and told Wallace Wilson's wife he had gone off, why did you tell her that? A. I don't know that I told her that. Q. Who helped you cut that hay? A. I don't know. Q. Did you drive the machine? A. I don't remember cutting any hay. Q. Was your arm hurt pretty bad? A. I don't know. Q. Did you tell any of the folks about your arm being hurt? A. I don't know that, Judge. Q. If you did cut hay the next day, your arm wasn't hurting very bad, was it? A. I don't know that. Q. Was your head sore? A. I don't know that. Q. Do you remember anything about your head hurting you any? A. I don't know. Q. When you were over here in jail and any of the parties would come up, you would go and jump in bed, cover up your head, and those darkeys would pull the cover off? A. I don't know that. Q. Do you remember, after the jailer

would go down, that you would get up and take the cover off of your head? A. I don't remember."

The defendant asked an instruction, numbered 18, reading as follows: "You are instructed that you should disregard the question asked by the court of the defendant regarding the defendant covering up his head in bed while in jail when the sheriff would come into the jail and then uncovering and getting up when the sheriff would leave."

The court refused this instruction, but gave, over defendant's objection, an instruction numbered 10, reading as follows: "Now, it is a principle of the law generally that any person who is incapable of distinguishing between right and wrong, or who is incapable of controlling their passion because of a diseased condition of the mind, that they cannot be held accountable and responsible, but it is always incumbent upon them to establish that fact by a preponderance of the evidence, and in determining this question you have a right, and it is your sworn duty, to exercise your common sense, your good judgment and your every day experience in weighing and considering this testimony, and ascertain whether or not such defense is interposed in this case to excuse one who, under the contentions of the State, has taken the life of his fellow man, and is offering, for the purpose of excusing his own alleged criminal acts, or whether such diseased condition of mind existed prior to and at the time of the taking of the life of the deceased. In other words, ascertain from the testimony, from the circumstances, from the surroundings, from the acts of the deceased and the defendant, whether or not this defense is interposed here at this time in an honest belief of the existence of its merits, or whether interposed for the purpose of acquitting a man charged with the offense of murder in the first degree. and the other degrees of murder, as included in this indictment."

It is now insisted that the court's questions, in connection with instruction numbered 10, constituted a

comment on the testimony. And we have concluded that such is the case. Instruction numbered 10 is argumentative in form, and objectionable as such, but, read by itself, it contains no expression of opinion, and we would not reverse the judgment for the giving of this instruction if it did not appear to constitute a comment on the testimony, when read in connection with the examination of the defendant by the court.

The court's questions are very significant. If defendant did what the questions imply, then he was probably feigning insanity. We find no predicate in the testimony of any witness in the case for these questions. No witness had testified that the defendant had done the things there inquired about. The trial court was right to ask questions, and it is not an improper thing to do when the testimony is obscure upon some point; and it is also proper to develop the facts in regard to some feature of the case which the court thinks has not been properly developed.

The court's questions did not tend to remove any obscurity. Indeed, they have the opposite effect. One cannot tell the purpose of the questions unless they were intended to develop some point about which the court had personal knowledge but about which no witness had testified. It does not appear who the parties were who apparently caught defendant feigning insanity by jumping in the bed and covering up his head, and the court's questions did not ask the defendant merely if he did this, but asked him if he remembered doing it, the clear intimation being that he had done the thing inquired about. This questioning, when followed by an instruction for the jury to ascertain from the testimony, from the surroundings, from the acts of the deceased and the defendant himself, whether or not the defense of insanity is interposed honestly or for the purpose of acquitting one charged with murder, constitutes, in our opinion, a comment on the testimony.

The trial court is forbidden by the Constitution from charging juries in regard to matters of fact, and, as we think there has been an infringement of this provision, the judgment is reversed, and the cause is remanded for a new trial.