[Crim. No. 3335. Second Appellate District, Division Two.—October 21, 1940.]

THE PEOPLE, Respondent, v. ISIDORE A. MILLER, Appellant.

Benjamin Elconin for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendant was charged in count I of the information with the crime of arson and in count II with the crime of burning insured property with intent to defraud the insurer. Both charges were founded upon the burning on September 5, 1939, of the drug store operated by defendant at 302 South Main Street in the city of Los Angeles. The drug store was part of the building used as a "dwelling-house". The second count charged the felonious burning of the merchandise on stock in the drug store. A jury having been waived, the action was tried before the court and defendant was found guilty on count I and not guilty on count II. He prosecutes this appeal from the judgment of conviction and from the order denying his motion for a new trial.

Defendant contends that the evidence is insufficient to support the judgment. In the store in question there was a front room, where merchandise was sold and business generally transacted; back of this room was a prescription room, adjoining which was a room referred to in the evidence as the surgical fitting room; a hallway led from the prescription room to the rear of the building. Defendant locked the store and went home early in the morning of the fire, no other person being in the store at the time. At about 3:30 A. M. the owner of the hotel over and adjoining the drug store was awakened by a guest and was informed that the burglar alarm was ringing in the drug store. He leaned out the window, concluded that there was a fire in the drug store premises and called the fire department. The firemen responded promptly, broke into the premises and in five minutes put out the fire with water. Captain Cordell of the fire

department testified that he discovered a fire in a carton of rubbish in one of the rooms, which he called the "stock" room, and also discovered a fire in the surgical fitting room. He testified: "From there I entered into what is marked here on this diagram, 'Surgical fitting room'; this was involved in fire. Across the top of the surgical table, as according to this diagram, along on the ledge of the window in the rear, was some combustible materials which I took to be records, sales slips and things of record of the business there". The Court: "Were they burning, Captain?" "A. Yes, they were burning. And to the right there is a cupboard, as indicated on this drawing. There was a fire in the cupboard, and on top of the cupboard, and extended back toward the door, within an approximation of 4 feet from the door." The officer further testified that there was no connection between these fires and that the substance that was burning inside the cupboard "was not in keeping with an ordinary fire"; that there was a clear blue flame without any appreciable amount of smoke. Officer Wiesinger of the police arson squad testified that he arrived at the scene of the fire about fifty-five minutes after it had been extinguished; that he found piles of empty cartons a few inches from the remains of the fire; that there were three separate fires in the premises.

An officer testified that an extinguished stub of a candle, which had been burned down to a length of one-half of an inch, was found on a magazine in the cupboard; that there were two cotton trails approximately three and four feet long, respectively, four inches wide and about a half an inch thick leading away from the candle in two directions; that the cotton was partly saturated with a volatile liquid which "smelled like gasoline or benzine"; that a ledger was propped up inside the cupboard with the pages open and the pages stuffed with cotton; that there was found on the cotton trail a "residue of cotton that had not entirely burnt" that the cotton trail "led from the candle inside the leaves of this ledger".

Defendant made statements to the officers which were shown to be untrue. He stated that he kept no candles in the store but candles were found which were similar to the stub of the candle found in the cabinet. He also stated that he had not previously collected insurance from a fire but it was shown that fifteen years earlier he had had a fire in his store and had collected insurance from the loss.

256

■ In arguing that the circumstantial evidence presented by the prosecution is insufficient defendant cites the case of *People* v. *Staples,* 149 Cal. 405 [86 Pac. 886], wherein it was held that ''where, in a case such as this, every circumstance relied on an incriminating is equally compatible with innocence, there is a failure of proof necessary to sustain a conviction, and the question presented is one of law for the court''. After the filing of defendant's opening brief the Supreme Court filed its decision in the case of *People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778], and concerning the Staples case, *supra,* said: ''The holding of the Staples case is to be strictly confined to situations where the reviewing court as a matter of law must conclude that there is no evidence, circumstantial or otherwise, that a crime has been committed, and therefore the evidence of guilt is insufficient.'' In effect, the Newland case so limits the rule of the Staples case that it is now applicable only where there is no evidence whatever that a crime has been committed. Of course, this is elementary and it is difficult to see how the rule of the Staples case can hereafter be cited for any useful purpose. In the Newland case the court further said: ''If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.'' It is difficult to distinguish this rule from the rule often referred to in civil cases, that the findings of the trial court will not be disturbed on appeal if there is substantial evidence to support them. ■ We are satisfied that the inferences drawn by the trial judge in the present action are reasonable and that the ''circumstances reasonably justify the judgment of the court''.

■ It is contended by defendant that the trial court erred in receiving in evidence statements made by the defendant that he had previously collected insurance money after a fire, there being no evidence that there had been any fraud in the earlier fire. In *People* v. *Bragdon,* 103 Cal. App. 20 [283 Pac. 881], it was held that the admission of such evidence was proper. In that case the defendant was charged with burning barns located upon a ranch for the purpose of defrauding an insurance company. It was held proper to show that previously a fire had occurred on the same ranch,

when a hotel was burned, and the defendant had collected and received a sum of money which the insurance company paid on account of the loss of the hotel. The evidence was deemed proper because ''the district attorney was attempting to prove that the defendant had a motive for burning the barns''. In the present action defendant was being tried on two counts at the time the evidence was received, one of the counts charging the burning of property to defraud an insurance carrier. On the authority of the Bragdon case it must be held that the court did not err in receiving the evidence.

■ There is no merit in defendant's contention that his acquittal on count II of the information is inconsistent with his conviction on count I. In the first count defendant was charged with the crime of arson, a crime of which one is guilty who wilfully and maliciously burns any dwelling house either the property of himself or another. In the second count defendant was charged with the crime of burning insured property, a crime defined in section 450a of the Penal Code. This crime is made up of elements different from the essential elements of the crime of arson. ■ One is guilty under the terms of this section who wilfully and with intent to defraud an insurer sets fire to merchandise or other personal property. The trial court could properly find defendant guilty of arson and at the same time could find that he did not burn property with the intent to defraud an insurer. A motive for the burning can be found in the fact that defendant's records and books of account had been placed in the immediate neighborhood of the fire. Pieces of cotton had been arranged among the leaves of the ledger. Evidence was introduced showing that a former employee, who had been discharged by defendant, had threatened defendant with investigation by the authorities upon a charge that he had defrauded the state in the matter of his sales tax at the store in question. The following is taken from one of the letters received by defendant from the former employee: ''Mr. Miller: Have positive evidence that you have defrauded State of sales tax from store No. 2 A. M. More to follow.'' It is apparent that the trial court could reasonably have drawn the inference that defendant had set fire to the premises to destroy his records.

■ Defendant complains that the trial judge asked leading questions of some of the witnesses for the prosecution. Even in a jury trial it is within the discretion of the court to permit counsel to ask leading questions. Defendant makes the further complaint, however, that the trial judge, although not actuated by "any wrong motive", so conducted himself "that he was not able to act with judicial fairness nor withhold the formation of his judgment on evidence until it was all in". The complaint seems to be founded on the fact that the judge in asking certain leading questions of witnesses aided the presentation of the prosecution's case and in so doing relied upon his own knowledge concerning such matters as fire, electricity and gasoline. The record before us discloses that the court's action is to be commended rather than subjected to criticism. A jury trial had been waived and the judge was called upon to decide the extremely important question whether the accused was guilty of a penitentiary offense. ■ The judge, and not the lawyers, was in control of the proceedings and there was no duty upon him to passively await the presentation of such facts as the lawyers chose, or were able, to develop. If during the examination of the witnesses the judge desired to be informed on certain points mentioned in the testimony it was entirely proper for him to ask questions for the purpose of developing all the facts in regard to them. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge.

■ Nor can the judge be charged with error in calling to his aid his own personal experience with the elements involved in the action. It is more to be desired that a judge or juror should have some knowledge of the action of fire, electricity and inflammable materials than that he should be ignorant on these subjects. Jurors are not prevented from using the knowledge which they may have acquired through experience or observation. (*Cederberg* v. *Robinson,* 100 Cal. 93 [34 Pac. 625].) In section 1875, subdivision 8, of the Code of Civil Procedure it is provided that courts may take judicial notice of the laws of nature and in so doing may resort for aid to appropriate books or documents of reference.

■ The trial court did not abuse its discretion in denying defendant's motion for a new trial. During the trial it was shown that electric wires connecting a floor lamp were burned

in two and that the fuse on the circuit was blown, resulting in a short circuit. An expert testified on behalf of defendant that the fire had been caused by the short circuit. Thereafter an expert on behalf of the prosecution testified that "it is impossible to state whether or not the short circuit caused the fire or the fire caused the short circuit". On motion for a new trial defendant presented an affidavit of an additional expert in which the affiant stated that it was his opinion that the fire "was caused solely and proximately by the short of the electric wiring in the said surgical room". Defendant also presented his own affidavit in which he stated that he could not with reasonable diligence have presented this additional testimony at the trial because he was unacquainted with the subject of electricity. The affidavit of the additional expert is purely cumulative. ▮ The question as to the effect of newly discovered evidence is from its nature one that is addressed to the discretion of the trial court. Such is the rule in cases tried with a jury and it is with special reason to be followed in cases tried before the court without a jury. Moreover, no showing has been made that the additional evidence could not have been produced at the trial if proper diligence had been exercised.

The judgment and the order denying a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 19, 1940. Houser, J., voted for a hearing.