[Crim. No. 3751.  Second Dist., Div. Three.  Feb. 7, 1944.]

THE PEOPLE, Respondent, v. CHRISTIAN N. KESS-
LER, Appellant.

Joseph W. Ryan and Theodor Ira Kowan for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

SHINN, J.—Appellant was accused by separate counts of an information of setting fire to a shop building and to goods, wares, and merchandise contained therein, with intent to defraud the insurer of the personal property, Rhode Island Insurance Company. He was found guilty by a jury and was sentenced on each count. He appeals from the judgments and from the order denying his motion for a new trial. A reversal is sought as to each conviction upon the sole ground of insufficiency of the evidence.

Defendant was 75 years of age and had followed the business of tailor, bushelman and clothes cleaner for many years. He came to Los Angeles in January, 1942, and in the following March bought a well equipped tailor shop in a rented store room, for the sum of $1,000. He moved into the place household furniture and equipment which he had brought from Philadelphia and which was contained in three large barrels and two or three trunks. He took out some of his household possessions when he set up housekeeping and left the remainder in a rear room of his shop. He was called on by an insurance solicitor and insured his tailoring equipment and fixtures for $2,000, and his personal belongings for $1,500. This latter policy was changed to maintain coverage of the insured goods as they were transferred to defendant's

residence, until at the time of the fire the coverage in the shop was only $500. Defendant had requested the elimination of this $500, but the request had not been acted upon by the company. The amount of $2,000 on the shop equipment was suggested by the solicitor as his estimate of what it would cost to reproduce it. Defendant lived in a small apartment with his housekeeper, a Mrs. Williams, who had been with him in that capacity for sixteen years. At the time of the fire Mrs. Williams was working in an aircraft plant on the midnight shift. Defendant did not drive a car and it was customary for Mrs. Williams, when returning from work in the morning, to drive defendant to his work. They were the only ones who had keys to the shop. Defendant was paying $30 a month rent for the shop and was not in arrears. After purchasing the shop he had $1,750 in the bank and his daughter owed him $250 which he had loaned her. Defendant testified that he did not keep any books, that he paid his bills as they fell due, that he was making a living and was not going into debt, but he did not testify at the trial as to his earnings in the shop. He testified that he was at home with Mrs. Williams on the night of the fire until she left for work at about 11:30, and alone until she returned the following morning.

Firemen arrived at defendant's shop about 7:30 in the morning. In the rear room, which was separated from the front by a partition with a draped opening, were a work bench, a couch, a night stand, a wooden table next to the couch, and three barrels containing papers that had been saturated with a liquid that gave off the odor of kerosene. This rear room was approximately 10 feet by 15 feet in size. The firemen were forced to break open the front door, which was locked, and found the room full of smoke, with a small smoldering fire in the rear room, which they extinguished. They also forced open a locked window in the rear of the shop, after breaking the glass. There were no other openings in the rear. Two separate fires had been started in kerosene soaked papers contained in wooden barrels, from which waxed twine had been extended to the work bench, on which other kerosene soaked papers had been placed. Holes had been burned through the work bench but no extensive damage had been done. Defendant concedes that the fire was of incendiary origin.

Investigators of the arson squad of the fire department met defendant outside of the shop about 9 o'clock on the morning of the fire. One of them testified as to conversations that he had with defendant to the following effect: That defendant said he had never suffered any other fires throughout the United States and that he did not know how much insurance he carried on the contents of the store; that his insurance policies were at home and that he did not know when he had last seen them; that he, defendant, was the only one who had a key to the shop; that the rear window was always locked and that he had locked the front door the previous night; that he had no enemies in the neighborhood and got along well with his competitors; that he kept no kerosene in the place; that the investigators went with defendant to his home and sat in the living room while defendant went to a small closet to find his insurance policies; that one of the investigators called defendant's attention to three insurance policies lying on a writing desk and asked him if they were the ones he was looking for and defendant said they were and that he had been looking at them the previous night because some of them had to be renewed. In a later conversation the investigators asked defendant why he did not remember various things and defendant replied, "If you find out various things I will tell you about it; otherwise I won't." Later on defendant stated that he had recalled that Mrs. Williams also had a key to the shop. In a later conversation defendant admitted having had a fire while living in Philadelphia, which he said had been caused by a young boy, and that he received some insurance money for the loss. After stating that this was the only fire he had ever had, defendant told of another fire he had had near Philadelphia, from which he had received some $250 in insurance. This fire, defendant stated, had been caused by a defective water heater. After persistent questioning, he admitted that he had had another fire in Lansdale, Pennsylvania, in May, 1941; that he had purchased a home there for $1,500, insured it for $3,500, the contents for $1,500, and that the place had burned to the ground; that he received $5,000 insurance money, paid off some bills and had $3,500 left when he came to Los Angeles. One of the investigators testified that defendant stated he had been making between $7.00 and $12.00 a week in his tailor shop.

The evidence upon which the People relied for a con-

viction was purely circumstantial. It was the duty of the jury to weigh it under the rules that all doubts were to be resolved in favor of defendant, and that there could be no conviction unless the facts or circumstances proved were not only entirely consistent with the theory of guilt but irreconcilable with any other rational conclusion. No complaint is made that the jury were not properly instructed as to their duties under these principles of law. ■ Our consideration of the contention that the evidence was legally insufficient to support the convictions is limited to determining whether there was a reasonable basis for the findings of guilt. If the circumstances reasonably justified the verdicts we would not be warranted in interfering with the determinations of the jury for the reason that we might believe those circumstances reasonably pointed to the innocence of the defendant. (*People* v. *Newland* (1940), 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Stark* (1936), 16 Cal.App.2d 467 [60 P.2d 595].) ■ Defendant, while admitting that the fire was of incendiary origin, insists that there was no evidence from which it could reasonably be inferred that it was started by him and not by someone else. He places great reliance upon the absence of evidence that he was in or about the premises shortly before the fire, the fact that the kerosene and waxed twine were not traced to him, and to the fact that the property was not insured for more than it was worth, from which it is argued that he was not shown to have had a motive for destroying the property by fire. These arguments were no doubt made to and given due consideration by the jury. But there were other facts against which they had to be weighed and which we believe furnished reasonable support for the findings of guilt. It was shown without conflict in the evidence that there were two entrances to the store room, the front door and the rear window. The door was locked and the window was securely fastened when the firemen arrived and both had to be forced open. A reasonable inference would be that the author of the fire entered the store room in the night time with a key, carefully set the scene for the fire, started it, and locked the door upon leaving. Defendant and Mrs. Williams had keys to the door and it was not shown that anyone else had one. No one was observed entering or leaving the building shortly before the fire and it would have been as easy for the defendant as for anyone else to enter

and leave without detection. There was slight evidence as to the value of the equipment which had been insured for $2,000; it consisted only of the statement of the defendant as to the price which he had paid for it and the testimony of the insurance solicitor that he had estimated the replacement value at $2,000. There was no evidence as to the value of the household goods and personal belongings of defendant which still remained in the room, carrying $500 of the original coverage of $1,500. As defendant had paid only $1,000 for the equipment he would have profited to the extent of $1,000 if he had collected the face of the policy. He had not offered the property for sale and there was no evidence as to what he considered to be its value or whether he believed it to be worth any more than he had paid for it. In considering whether defendant had a motive for destroying the property, the jury could reasonably have believed that the price paid for the property was more convincing evidence of its value than the estimate placed upon it by the solicitor as the insurable value, and that the prospect of collecting from the insurance company $2,000 for property which had cost him only half that amount provided a motive for the commission of the crimes. The jury were justified in believing, and no doubt did believe, that defendant had made false statements to the fire department investigators. It is true that he denied some of these statements and offered explanations with reference to others, but no doubt the jury resolved these conflicts against him. If so, they believed that he had endeavored to conceal the fact that he had experienced other fires and that he made a false statement regarding his insurance policies in telling the investigators that he did not know how much insurance he carried. Other significant circumstances were that he pretended to look in a closet for the policies while they were in plain sight on his writing desk and that he admitted having looked them over the evening preceding the fire.

The evidence concerning the former fires came in without objection, and it is now urged that as there was no proof that those fires were of incendiary origin, the evidence concerning them had no tendency to prove any fact in the case. But the jury had the right to accord some weight to defendant's denials and reluctant admissions of former fires as tending to show a consciousness of guilt. (*People* v. *Miller* (1940), 41 Cal.App.2d 252, at 256 [106 P.2d 239].) Further-

more, it would have been reasonable to believe that defendant had not entirely forgotten that his latest insurance investment in Pennsylvania had proven highly profitable. The fact that he might have profited from the Los Angeles fire, as he had profited from the last Pennsylvania fire, by the collection of insurance far in excess of the value of the property destroyed, may have been a coincidence, but if so, defendant's attempted concealment of the fact that he had suffered that particular fire in Pennsylvania would indicate that he realized that it would be regarded as a suspicious circumstance. As already stated, defendant kept no records as to the amount of his total earnings in the shop. The testimony as to his statement that he made from $7.00 to $12.00 a week in the shop, if believed, and his advanced age, which was admitted, would have tended to show that he had little to gain by continuing in the business which he had operated with so little success for a period of more than a year. In addition to all of this, no one other than defendant was even suspected of having caused the fire, and we think the jury would have been unable to find in the evidence any reasonable basis for believing that it was started by someone other than defendant. The evidence of defendant's guilt was by no means conclusive, but crimes which are committed by setting fire to property are usually planned and executed with stealth and secrecy.

■ Where the crime of burning property has been proved, the fact that the property was overinsured, as it, was in the instant case, especially when coupled with deceitful statements of the accused tending to show a consciousness of guilt, has frequently been held to be sufficient to sustain a conviction of arson or allied offenses. (*People* v. *Patello* (1932), 125 Cal.App. 480 [13 P.2d 1068], and cases there cited.) If the jury were satisfied beyond a reasonable doubt that defendant had set the fire they could scarcely have concluded that he had not done so wilfully and maliciously, which was essential to his guilt of violating section 448a of the Penal Code, as charged in the first count, and with intent to defraud the company by which he was insured, which was an element of the crime charged .in the second count— violation of section 450a of the Penal Code.

The judgment as to each count and order denying motion for new trial are affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.