ARTHUR ROY JORDAN AND RUBY LEE JORDAN *v.*
ESTHER GUINN AND INEZ ETHERIDGE

5-6015                                    485 S.W. 2d 715

Opinion delivered October 23, 1972

*Robert S. Irwin,* for appellants.

*Gordon & Gordon, P.A.,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellants and appellee
Esther Guinn deraign title from a common source, i.e.,
W. H. Dunn. Inez Etheridge acquired a tract adjoining
the Guinn property, but her claim of title came through

a different source. This litigation arose from a controversy about a "road" running across the north side of the Jordan tract. Appellees instituted this action to require appellants to remove a fence across the east end of the "road" and a gate across the west end. They alleged that the way had become a public road by virtue of its construction and maintenance by Conway County, its prescriptive use by the public for more than seven years and its incorporation into the county's public highway system by operation of Ark. Stat. Ann. § 76-107 (Repl. 1957). Appellants denied the existence of a public road and alleged that any use of the road by appellees was permissive only. The complaint was later amended to assert the oral dedication of the way in question as a public road across the Jordan tract by W. H. Dunn at the time of his purchase of the property.

The chancellor found that the way across the Jordan land was not a public road, but held that an easement appurtenant was granted by Dunn when he sold the Guinn tract to one Farris, for the benefit of Farris and the public generally, as a means of access to the Farris land, of which appellants and other subsequent purchasers of the Dunn land had notice, and by which they were bound. He further found that the easement was 20 feet wide and that the fence and gate erected constituted an unreasonable obstruction. The court directed the removal of the gate and fence.

Appellants list four points for reversal, viz:

I. The trial court erred in finding that an easement appurtenant in favor of a dominant tenement across a servient tenement extends to appellee Etheridge, who is a stranger to the title here involved.

II. The testimony of the witness concerning the width of the alleged easement was elicited by the court over the objection of appellant and is an indispensable element of proof which appellee had totally failed to make.

III. The proof of the width of the alleged easement is too vague and indefinite to support a finding that it was exactly twenty (20) feet wide.

IV. The proof shows that the common grantor, W. H. Dunn, controlled his and others' use of the land in question by fences and gates in the same manner appellant is now attempting to do. The character of the easement, if any, should pass to appellee, unenlarged.

We need not consider appellants' Point I because it is moot. The chancery court dismissed the complaint of appellee Etheridge. There is no appeal from that part of the decree.

The finding that the easement was 20 feet wide was based upon the testimony of W. H. Dunn elicited by questions asked by the chancellor. Dunn had testified that he had excluded the way from a deed to a man named Williams, a predecessor in title of Jordan, to part of the Jordan lands. The chancellor, after direct and cross-examination and redirect and recross-examination had been concluded, first ascertained that examination by counsel for the respective parties had been completed, and then commenced a line of inquiry as to the order in which Dunn sold various tracts of land involved and specifically asked the witness how far short of Dunn's north line the tract sold Williams ran. Dunn replied "Approximately 20-24 feet." The chancellor also asked the width of the tract Dunn withheld from the Williams deed, and Dunn responded that it was at least 20 feet, if not 24 feet. When asked to state his reason for not deeding this strip to Williams, Dunn replied that a road had been established there. No objection was made by either party to any of these questions or answers. When the chancellor asked Dunn to state the present width of the road, over appellants' objection, the witness said that it was at least 20 feet. We find no reversible error.

The rule governing examination of witnesses by a circuit judge in a jury trial has been clearly established

in Arkansas for many years in decisions such as *Sharp* v. *State,* 51 Ark. 147, 10 S.W. 228; *Arkansas Central R. Co.* v. *Craig,* 76 Ark. 258, 88 S.W. 878, 6 Ann. Cas. 476; and *Ratton* v. *Busby,* 230 Ark. 667, 326 S.W. 2d 889, 76 A.L.R. 2d 751. A restatement of the rule in the *Ratton* case included the following:

> The judge has the right, in a criminal prosecution, to interrogate the witnesses but he has no right to usurp the place of the state's attorney, "and prescribe the order of introduction of the witnesses, and become active in their examination"; nor has he the right to assume the duties resting on the prisoner's counsel in the general conduct of the defense. He may ask questions which the attorneys had the right to propound, and failed to ask, when the answers to the same may tend to prove the guilt or innocence of the accused. It would be a reproach to the laws of the state, if he was required to sit and see the guilty escape, or the innocent suffer through a failure of parties or their attorneys to ask a witness a necessary question. * * * In all trials the judge should preside with impartiality. In jury trials especially, he ought to be cautious and circumspect in his language and conduct before the jury. He should not express or intimate an opinion as to the credibility of a witness, or as to controverted facts. For the jury are the sole judges of fact, and the credibility of witnesses; and the constitution expressly prohibits the judge from charging them as to the facts. * * *

> Counsel for appellant contends with much force that the judgment should be reversed because the presiding judge during the trial propounded questions to the witnesses for plaintiff and defendant. The contention is not that these questions were improper, had they been propounded by counsel for plaintiff, but the contention is made that by propounding a number of questions the judge thereby assumed the role of attorney, and in that way indicated to the jury his opinion of the evidence, and prejudiced the

rights of the defendant. It is true that a judge, under our law, should neither directly nor indirectly indicate to the jury his opinion of the facts in the case when the same are in dispute, and when the jury are to determine what the facts are. * * * It seems to be the general rule well supported by the decided cases, that the trial judge has the right to propound such questions to witnesses as may be necessary in order to elicit pertinent facts, in order that the truth may be established. Of course, this must be done in a reasonable and impartial way, so as not to indicate his opinion of the facts, and thereby prejudice the rights of the parties. * * * It is not usually necessary that the judge should propound many questions to witnesses, and for the judge to take the case out of the hands of counsel and take the lead in the examination of witnesses might at times be improper and prejudicial. But it would be a reproach to the law if he were required to sit still in either a civil or criminal trial, and see justice defeated through the failure of counsel to ask a witness a pertinent question.

Even in a criminal case, where the reasons for restraints upon the trial judge's examination of witnesses are of greater import than in civil cases, the judge is not merely a chairman presiding at the trial, who must remain mute, after convening the court, until a party calls upon him to make a ruling, a disorder occurs in the courtroom, or the appropriate time for a recess or adjournment is reached. See *Arkansas Central R. Co.* v. *Craig,* supra. He has some responsibility for the proper conduct of the trial, the ascertainment of truth and the achievement of justice. See, *Glasser* v. *United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *People* v. *Corrigan,* 48 Cal. 2d 551, 310 P. 2d 953 (1957). He has the right and the duty to ask questions to clear up an obscurity in the testimony or even to develop facts in regard to some feature of the case he feels has not been properly developed. *Flake* v. *State,* 159 Ark. 37, 251 S.W. 362; *New* v. *State,* 99 Ark. 142, 137 S.W. 564. See also, *Hayes*

v. *State,* 142 Ark. 587, 219 S.W. 312; *People* v. *Rigney,* 55 Cal. 2d 236, 10 Cal. Rptr. 625, 359 P. 2d 23, 98 A.L.R. 2d 186 (per Traynor, J.) (1961); *People* v. *Bookhammer,* 223 Cal. App. 2d 278, 35 Cal. Rptr. 779 (1963). The reasons for restraint are minimal when the judge is the trier of the facts, and his responsibilities for elicitation of all pertinent facts are perhaps increased. *People* v. *Miller,* 41 Cal. App. 2d 252, 106 P. 2d 239 (1940). There seems to be little room for doubt that the inquiry to which objection was made would have been properly allowed if made by a juror. See *Ratton* v. *Busby,* supra.

While we do not seem to have been called upon to rule upon the identical situation, logic dictates that we follow virtually unanimous authority holding that the extent of examination of a witness by the presiding judge who is the trier of the facts rests largely in his sound judicial discretion, especially when, as here, examination by the parties has been concluded. *Glasser* v. *United States,* supra; *United States* v. *McCarthy,* 196 F. 2d 616 (7th Cir. 1952); *People* v. *Palmer,* 26 Ill. 2d 464, 187 N.E. 2d 236 (1963), cert. denied sub nom *Fingers* v. *Illinois,* 373 U.S. 951, 83 S. Ct. 1681, 10 L. Ed. 2d 206 (1963); *People* v. *Palmer,* 27 Ill. 2d 311, 189 N.E. 2d 265 (1963); *People* v. *Harrell,* 252 Cal. App. 2d 735, 60 Cal. Rptr. 864 (1967); *People* v. *Miller,* supra; *People* v. *Bookhammer,* supra; *Shehyn* v. *Humphrey,* 117 A. 2d 448 (Mun. Ct. App. D. C. 1955). See also, Annot. 57 L.R.A. 875, 878 (1903); L.R.A. 1916A 1191, 1192 (1916); 6 Ann. Cas. 477 (1905). We find no abuse of discretion in this case. We further find that the testimony clearly supports a finding that the easement was 20 feet wide, the minimum width stated by Dunn.

We understand that appellants, in their fourth point, are contending that the character of the easement granted permitted the owner of the servient estate to place obstructions in the way and that the gates and gaps placed across the easement did not materially differ from obstructions formerly maintained by Dunn. There is no question about Dunn's intention that his grantees have an easement for ingress and egress across the property

to which he retained title, which includes that now owned by the Jordans. The chancellor made a specific finding that the gate and fences placed across the way represented an unreasonable obstruction of the way, and ordered their immediate removal.

The general rule regarding the obstruction by fences or gates of such private easements by the owner of the servient estate is that a fence may not be erected so as to entirely obstruct the way, but that unless it is expressly stipulated or it appears from the terms of the grant or the surrounding circumstances that the way shall be an open one, without gates, the owner of the servient estate may erect gates across the way if they are so located, constructed or maintained as not unreasonably to interfere with the right of passage, when they are necessary for the preservation and proper and efficient use of the lands constituting the servient estate. 28 C.J.S. 781, Easements, § 98(b); 25 Am. Jur. 2d 497, § 91. See *Hockersmith* v. *Glidewell*, (Ark. unreported) 153 S.W. 252; Restatement of the Law of Property, Servitudes, § 486.

Although we were dealing with a prescriptive easement, we followed the general rules in *Massee* v. *Schiller*, 243 Ark. 572, 420 S.W. 2d 839. We there noted important considerations to be weighed in determining the extent of the easement and the right of the servient owner to place gates across the way. For example, we referred to comments by the authors of Restatement of the Law, Property-Servitudes, that, as the extend of the easement becomes more difficult to discover, the relations between the owner and the possessor of the servient estate become increasingly subject to the governing principle that neither shall unreasonably interfere with the rights of the other, that what is reasonable in one situation may become unreasonable in another and may vary with conditions as they develop and that the determination as to unreasonableness depends primarily upon consideration of the relative advantage to the owner of the servient estate and the disadvantage to the easement owner. We concluded that what is reasonable or unreasonable depends upon the facts and circumstances of the particular case and that

reasonable minds might differ on the subject. In other words, the question is generally one of fact. See also, *Hockersmith* v. *Glidewell*, supra; 25 Am. Jur. 496, 498, Easements and Licenses §§ 89, 91.

Pertinent factors to be considered include the terms of the grant, the intention of the parties as reflected by the circumstances, the nature and situation of the property and the manner in which it has been used and occupied before and after the grant and location of gates. See Annot. 73 A.L.R. 778, 25 Am. Jur. 497, Easements and Licenses, § 91; 28 C.J.S. 781, Easements § 98; Restatement of the Law of Property, Servitudes, § 483.

The difference in the judicial determination of the extent of easements by prescription and by grant lies largely in approach and process. In the case of an easement by prescription both its creation and extent are ascertained from the adverse use of the property over a long period of time. In the case of an easement by grant, the creation is evidenced by the language and circumstances of the grant, and the extent of the easement is to be ascertained from the language construed in the light of relevant circumstances. The relative importance of the language and the circumstances varies from case to case, depending upon the completeness and clarity of the language used. The less complete or clear the language, the more important the circumstances become. Uses by the owner of the servient tenement made prior to the grant, as well as those made subsequent thereto, and the actions of the parties with reference to the easement after the grant may be considered insofar as they aid in the ascertainment of the extent and meaning of the grant. Comments, Restatement of the Law of Property, Servitude, § 483.

Whatever right the Jordans may have to place obstructions across the easement of appellee Guinn, such obstructions must not be of such a character as to interfere with the reasonable enjoyment of the easement by Esther Guinn, and must be for the purposes appropriate to the

Jordans' use of their own property, not for the purpose of annoying the easement owner or obstructing her in the use of the way. See *Hockersmith* v. *Glidewell,* supra. We find nothing in the evidence to indicate any express agreement that the way would be open or that Dunn retained the right to maintain any gates or gaps.

Orville Guinn, father of Esther Guinn, who actually dealt with Dunn in purchasing the property deeded to his daughter, testified that Roy Jordan had closed, blocked or "stopped up" the road by a gate at one end of the Jordan property and a fence at the other and that one could not go into or from his daughter's property over the way after Jordan had placed gates across it. Esther Guinn testified that the road was "blocked off." Dunn also testified that the road was closed, as did Inez Etheridge, who stated that Jordan first blocked the way by parking his car in it. Mrs. Jordan testified that in order to give notice that people should not cross the Jordan property a fence was built across the strip about which this dispute arose and that the parking of the Jordan vehicle across it was to protect the interest of the Jordans in keeping that land to themselves. Mr. Jordan also said that he blocked passage over the "road" first by parking a car across it and later by a fence.

We find no evidence that the gate and fence were placed across the way for any purpose relating to appellants' use of the servient estate or any purpose other than to prevent its use as a means of ingress to and egress from the Guinn property. Appellant places his principal reliance for the right to place barriers across the way upon testimony of Dunn about having once had a gap at the west side of the Jordan property. As we read this testimony, the gap was maintained by Dunn at a time when he owned both the Guinn land and the Jordan property. Even though Dunn stated that he had a gap there when he "pastured it," we cannot say that he had particular reference to one or the other of the tracts now owned by the parties to this action. Furthermore, we cannot say when Dunn "pastured" the land, even with relation to the sales of the Guinn and Jordan tracts.

It is clear that appellants had no right to completely obstruct the way. From our review of the circumstances and of the evidence pertaining to the use of the easement, we are unable to say that the chancellor's finding that the fence and gate constituted unreasonable obstructions was clearly against the preponderance of the evidence.

The decree is affirmed.