2003 WY 39

**Anne WHITE, Appellant (Defendant),**

v.

**Dan ALLEN and Melinda Allen, Appellees (Plaintiffs).**

**No. 02–121.**

Supreme Court of Wyoming.

March 18, 2003.

Bernard Q. Phelan, Cheyenne, Wyoming, Representing Appellant.

Peter G. Arnold, Cheyenne, Wyoming, Representing Appellees.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1]  Appellant, Anne White (White), appeals from the order of the district court that granted summary judgment in favor of Appellees, Dan and Melinda Allen (Allens) and

dismissed her counterclaims. The Allens have an easement for a roadway across White's property. They erected cattle guards on the eastern and western boundaries of the easement where the roadway intersects the fence enclosing the White parcel. A dispute arose between the parties when White placed gates on that easement as it passed through her fence lines, and insisted that the gates remain closed before and after each passage through the fence. The district court ordered White to remove her gates and prohibited her from otherwise interfering with the Allens' use of the easement.

[¶ 2] We will reverse and remand with directions that further proceedings are required because there are genuine issues of material fact that preclude summary judgment.

### ISSUES

[¶ 3] White poses these questions:

I. Whether, as a matter of law, cattle guards do not materially increase the burden on the servient estate, or whether such factual determination depends on the specific circumstances?

II. Whether Wyo. Stat. § 6–9–202 imposes a duty which, in these circumstances, gives rise to an action in tort?

The Allens present these arguments:

I. Whether the owner of land which is encumbered with an access easement has the right to place wire gates across cattle guards erected within the easement by the easement owner?

II. Is the determination of whether cattle guards increase the burden on the servient estate a material question of fact?

III. Whether W.S. 6–9–202 which makes it a crime to leave a gate open is applicable when the gate in question is not legally permissible?

### FACTS

[¶ 4] The Allens initiated this action by means of a "Complaint for Declaratory Judgment and Money Judgment." The Allens (who possess the dominant estate) have an easement across White's property (the servient estate). In their complaint, the Allens alleged that White insisted on having a wire gate across the cattle guards that they installed at each end of their easement, and that she otherwise interfered with their use of the easement, as well as their tenants' and visitors' use of the easement. The Allens alleged that White damaged the cattle guards they installed, thus rendering them less effective for their intended purpose. They further alleged that they have friends who are disabled and physically unable to open and close the gates, which are unusually tight and difficult to operate, and that emergency services would be delayed by the gates. The source document for the Allens' easement contains only this language: "Subject to an access road right-of-way for the non-exclusive use by the patentees, their successors and assigns [Allens], to construct, use, control, maintain, improve and repair a road over and across [White's land]."

[¶ 5] White answered that complaint, claiming that the cattle guards installed by the Allens were inadequate and substantially increased the burden on her property because they allowed her cattle to drift out of her property. In addition, White claimed to have been damaged by the failure of the Allens to close her gates. White made a demand for a jury trial.

[¶ 6] The Allens filed a motion for summary judgment and White opposed that motion. Both parties submitted affidavits and, on the basis of those affidavits, the district court made its findings. The district court found that the Allens had placed cattle guards on the easement so as to facilitate their use of it. White then installed wire gates without the permission of the Allens and insisted that those gates be kept closed. The gates interfered with the Allens' use of their easement. The Allens maintained that it was inconvenient to get out and open, and then close, the two gates each time they or a visitor traversed the road. In addition, they asserted that it was dangerous because it was necessary to walk over the cattle guards, especially when they were wet, snowy, or icy. The Allens once observed one of White's cattle use its horns to lift a fence and go

under it, thereby breaching the cattle guard by an alternate method. The district court found that the gates would either require emergency vehicles to drive through the gates, or to have to stop and open and close them. The Allens attested that, on occasions, cattle escaped from White's premises when the gates were closed and, on occasions, did not escape when the gates were open. The district court also made these findings:

12. When a right-of-way easement is granted, a right of passage is given to the owner of the easement. The owner of the servient estate, of course, retains all rights of ownership which are consistent with the [Allens'] use of the easement. These competing rights must be balanced to promote the enjoyment of both the easement and the servient estate. [White's] cattle, in search of food, escape from her land regardless of whether the gates are in place and closed and therefore a reasonable balancing of the parties' rights dictates that the gates are an unnecessary impediment to the [Allens'] right to use, maintain and control the easement.

13. The [Allens'] use of cattle guards in place of gates does not materially increase the burden on the servient estate held by [White], however, opening and closing of two different gates each time one enters or leaves the dominant estate is quite burdensome.

14. The [Allens] should be allowed to maintain in place their cattle guards instead of gates on the easement in order to improve their convenience of using the easement.

15. [White] as the owner of the servient estate does not have the right to insist upon the usage of gates in addition to or in lieu of cattle guards.

[¶ 7] The Allens' evidentiary materials included an affidavit from a University of Wyoming professor, stating that the cattle guards installed by the Allens were more effective at keeping the cattle in than were White's fences and met Wyoming Department of Transportation (WDOT) Standards. We note that the WDOT standards are not a part of the record, nor are the relevance of those standards to this case readily apparent since neither of these cattle guards is on a highway or railroad crossing.

[¶ 8] In her affidavit, White attested to the fact that she used the land which the easement traverses for grazing cattle, and that it has been so used since the area was settled by cattle growers. White averred that the Allens placed the cattle guards on the easement without her consent. White claimed that she informed the Allens that cattle guards would not suffice before they put them in. When her cattle began escaping, White informed the Allens that the gates would have to be kept shut. White asserted that her cattle escaped over the cattle guards from time to time and she attached photographs to her affidavit purporting to show some of those occasions. In addition, White attested to the fact that she is under court order to keep her cattle contained or face contempt and/or criminal proceedings.

## STANDARD OF REVIEW

[¶ 9] When we review a summary judgment, we have before us the same materials as did the district court, and we follow the same standards which applied to the proceedings below. The propriety of granting a motion for summary judgment depends upon the correctness of the dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. We, of course, examine the record from a vantage point most favorable to that party who opposed the motion, affording to that party the benefit of all favorable inferences that fairly may be drawn from the record. *Central Wyoming Medical Laboratory, LLC v. Medical Testing Lab, Inc.*, 2002 WY 47, ¶ 15, 43 P.3d 121, ¶ 15 (Wyo.2002).

## DISCUSSION

### Is There a Genuine Issue of Material Fact

[¶ 10] In *Van Raden v. Harper*, 891 P.2d 78, 78–79 (Wyo.1995), we held that

whether or not the substitution of cattle guards for gates on a right-of-way easement materially increases the burden on the servient estate is a question of law.[1] In a dissent joined by Justices Lehman and Golden, it was concluded that such an issue is a question of fact. Although it was surplusage as applied, we iterated our holding in *Van Raden* in the case *Weiss v. Pedersen*, 933 P.2d 495, 500 (Wyo.1997). Very recently, in *Hutchings v. Krachun*, 2002 WY 98, ¶ 18, 49 P.3d 176, ¶ 18 (Wyo.2002), we stated:

In *Weiss v. Pedersen*, 933 P.2d at 500, we specifically held that the owner of the servient estate cannot impede the easement holder's use of the easement by the placement of a gate in lieu of a cattle guard. Furthermore, *Van Raden*, 891 P.2d at 79, stands for the proposition that an easement holder's installation of a cattle guard is not an unauthorized increase in the burden on the servient estate. Consequently, our precedent supports the conclusion that, in most cases, the easement owner has the ultimate right to decide whether gates or cattle guards will be employed on access easements. Allowing the placement of a gate on the easement where it meets the county road by landowners prohibits the access and convenient passage of easement owner along the easement as expressly granted.

■ [¶ 11] However, in the *Hutchings* case we were not confronted with a case involving issuance of a summary judgment, but rather with findings of a district court made after a trial to the court. In addition, in *Hutchings* Justices Hill and Kite joined in a dissent, which asked the Court to disavow the *Van Raden* and *Weiss* decisions. The dissent in *Van Raden* and the dissent in

*Hutchings* are very much in harmony, and today we find ourselves obliged to overrule *Van Raden* with respect to its conclusion that the justification for the placement of cattle guards, in lieu of gates, is a question of law. As a consequence, our reliance on *Van Raden* in the context of both *Weiss* and *Hutchings* is also negated.

■ [¶ 12] The premise of our holding today has been summarized as follows:

Turning first to gates across a right of way acquired by grant, the general rule is that the grant of a way without reservation of the right to maintain gates does not necessarily preclude the servient estate owner from having such gates, and unless it is expressly stipulated in the grant that the way shall be an open one, or unless a prohibition of gates is implied from circumstances, the servient owner may maintain a gate across the way if necessary for the use of the servient estate and if the gate does not unreasonably interfere with the right of passage.

Daniel E. Feld, Annotation, *Right to Maintain Gate or Fence Across Right of Way*, 52 A.L.R.3d 9 § 2 at 15 (1973 and Supp.2002).

■ [¶ 13] The cases collected by the annotation establish that the factual questions to be answered in circumstances such as those presented here are questions of fact, which are not suitable for resolution by way of summary judgment. "... [O]rdinarily, what may be considered a proper use by the servient owner is a question of fact." *Schold v. Sawyer*, 944 P.2d 683, 685 (Colo.App.1997) (*citing United States v. O'Block*, 788 F.2d 1433 (10th Cir.1986) for the proposition that Utah law established that whether restriction

---

1. In so holding, we relied on *Mize v. Ownby*, 189 Tenn. 207, 225 S.W.2d 33, 35 (1949). That case does not stand for the proposition for which it was cited at all. Indeed, the opinion makes clear that the trial court took a large volume of proof. The central concerns of that case were the effectiveness of cattle guards versus gates, as well as the reasonableness of gates versus inconvenience to easement holders, issues that appear to be alive and well to this date. *Cooper v. Polos*, 898 S.W.2d 237, 239–242 (Tenn.App.1995). The ultimate holding of the case was much the same as the cases cited in our discussion. The Tennessee Supreme Court held:

The proof shows that the defendant's family used motor vehicles in going to and from their work. The Court of Appeals gave defendant the right to install cattle guards, at his expense, according to the plans of the University of Tennessee. Defendant was charged with the duty of suitably maintaining such cattle guards, and if they become out of repair, or do not adequately perform the functions for which they were intended, complainant may apply to the trial court for a restoration of the gates, and defendant will be liable for any damages sustained as an incident thereto.

*Mize*, 225 S.W.2d at 35.

on access to easement is reasonable is a question of fact. *Wykoff v. Barton*, 646 P.2d 756, 759 (Utah 1982)); *Engel v. Gampp*, 2000 MT 17, ¶ 50, 298 Mont. 116, 993 P.2d 701, ¶ 50 (2000) (*citing Gabriel v. Wood*, 261 Mont. 170, 862 P.2d 42, 45–46 (1993)); *Marshall v. Blair*, 130 Idaho 675, 946 P.2d 975, 982 (1997).

[¶ 14] Another recent case in point dealt with circumstances very much akin to those confronted in the instant matter. In *Watson v. Banducci*, 158 Or.App. 223, 973 P.2d 395, 401 (1999), a long-time rancher testified that, "cattle guards, in general, do not work effectively without gates:"

> Any time [livestock] are crowded up close or if you wean calves or separate livestock that they will get in a position where they will try jumping them, sometimes they don't and they break legs, other times they jump them. Horses are bad for just trying cattle guards because they get running and playing and they always end up in the cattle guard it seems like.

973 P.2d at 401–402.

[¶ 15] In that case, the servient landowner met his burden of establishing that the gate was reasonable. As to the second question, whether the gates posed an unreasonable interference with the easement, the burden rests with the dominant estate owner:

> In other words, plaintiffs were obligated to show that it is essential to their enjoyment of the easement that defendants not close gates B and C and not lock gate B. Plaintiffs produced evidence that the gates caused some inconvenience to plaintiffs and persons visiting their property, in that they must stop, unlock, and open the gates to pass through, and then must reclose and relock the gates before proceeding. Inconvenience of that nature, however, was inherent in the grant of an easement for a gateway road—that is, a road that would be gated in a manner consistent with the

ordinary use of the surrounding land. Because the easement expressly made plaintiffs' right to use the roadway subject to such inconveniences, they needed to show more.

*Watson*, 973 P.2d at 402. In this case, the district court did make such factual findings, yet, at the same time, granted summary judgment. Those findings included:

> 12 .... a reasonable balancing of the parties' rights dictates that the gates are an unnecessary impediment to the [Allens'] rights to use, maintain and control the easement.
>
> 13. The use of cattle guards in place of gates does not materially increase the burden on the servient estate ..., however, opening and closing of two different gates each time one enters or leaves the dominant estate is quite burdensome.
>
> 14. The [Allens] should be allowed to maintain in place their cattle guards instead of gates on the easement in order to improve their convenience of using the easement.

While all of these facts are relevant to the ultimate determination pursuant to the applicable legal standard, they were disputed and summary judgment was inappropriate.

[¶ 16] In the instant case, the phrase "gateway road" does not appear in the easement. However, the language used in the easement, which benefits the Allens, does not unambiguously prohibit the installation of gates. Whether such gates are reasonably necessary to the servient estate, or constitute an unreasonable inconvenience to the dominant estate, are questions of fact to be resolved by the fact finder in the light of all the evidence that may be presented by the parties. *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 316–18 (Colo.App. 1996) (citing *Restatement of Property* § 483 (1944))[2]; *Gamburg v. Cooper*, 131 Ariz. 545,

---

**2.** The 1944 Restatement provided:

§ 483. Factors in Ascertaining Extent.
In ascertaining the extent of an easement created by conveyance, the following are important factors
(a) the circumstances under which the conveyance was made,

(b) the fact that the conveyance was or was not gratuitous,
(c) the use made of the servient tenement before the conveyance,
(d) the use made of the servient tenement after the conveyance.

642 P.2d 890, 891–92 (App.1982). With respect to the construction of easements, *see* 3 *Richard Ray Powell on Real Property* § 24.03 (2002), and 4 *Richard Ray Powell on Real Property* § 34.12 (2001).

**The Significance of Wyo. Stat. Ann. § 6–9–202**

[¶ 17] White contends that Wyo. Stat. Ann. § 6–9–202 creates in her a right to file a tort action against the Allens under the circumstances presented here. That statute provides: "A person is guilty of a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00) if he opens and neglects to close a gate or replace bars in a fence which crosses a private road or a river, stream or ditch." This argument is not supported by cogent argument or pertinent authority and we decline to consider it

further. *GGV v. JLR*, 2002 WY 19, ¶ 20, 39 P.3d 1066, ¶ 20 (Wyo.2002).

## CONCLUSION

[¶ 18] There are genuine issues of material fact with respect to the reasonableness of White's placement of gates on the easement, as well as with respect to the substantiality of the inconvenience posed by those gates for the Allens. The order on summary judgment is reversed and the matter is remanded to the district court for proceedings consistent with this opinion.

The Restatement of the Law Third, Property, Servitudes (2000), provides this guidance:
§ 4.1   Interpretation of Servitudes
(1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created.
§ 4.10   Use Rights Conferred by a Servitude
Except as limited by the terms of the servitude determined under § 4.1, the holder of an easement or profit as defined in § 1.2 is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefited by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment.