2005 WY 72

**Anne WHITE, Appellant (Defendant),**

v.

**Dan ALLEN and Malinda Allen, Appellees (Plaintiffs).**

**No. 04–155.**

Supreme Court of Wyoming.

July 6, 2005.

2. One cubic foot per second can be converted to gallons per minute using the following equation:

$$1 \frac{ft^3}{\underline{\quad}} \times \frac{7.48\ gal}{\underline{\quad}} \times \frac{60\ sec}{\underline{\quad}} = 448.8 \frac{gal}{\underline{\quad}}$$

 sec ft[3] min min

Leonard Rice and Michael White, *Engineering Aspects of Water Law* 169, 185 (John Wiley and Sons 1987).

**10**

Representing Appellant: Pro se.

Representing Appellees: Don W. Riske of Riske & Salisbury, P.C., Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶1]  *Pro se* appellant Anne White appeals from a district court decision finding appellees Dan and Malinda Allen (the Allens) could use cattle guards instead of gates on their access easement across Ms. White's property.  We affirm.

## ISSUES

[¶2]  The issues presented by the parties are as follows:

I.   Whether, as a matter of law, the word "control" in the Allen's easement allows the owner of the Allen parcel to declare the right an "open way," based upon a finding of fact that they "control" the entire road.

II.  Whether, as a matter of law, the plaintiff's use of cattle guards in lieu of gates do[es] not materially increase the burden on the servient estate.

III. Whether the servient estate should be allowed to seek a trespass action against the dominant estate for misuse of the servitude, in tort, and have a jury trial.

## FACTS

[¶3] This is the second appeal of this particular case to this Court.  *White v. Allen,* 2003 WY 39, 65 P.3d 395 (Wyo.2003).  Ms. White and the Allens own adjacent properties in rural Laramie County. Ms. White grazes approximately twenty head of cattle on her forty-acre parcel.  The Allens have an access easement across Ms. White's property.  In June 2000, the Allens installed cattle guards at each end of their access easement.  Ms. White was concerned about her cattle crossing the cattle guards; consequently, she installed wire gates across the cattle guards and insisted that they be closed at all times. The Allens found it to be inconvenient and unsafe to open and close the gates each time they traveled the easement.

[¶4]  The Allens filed an action in the district court seeking a declaration concerning whether they could place cattle guards across their easement in lieu of the gates. The district court entered summary judgment in favor of the Allens.  *White,* ¶6. The district court ruled, in accordance with *Van Raden v. Harper,* 891 P.2d 78, 79 (Wyo.1995) that, as a matter of law, the Allens' use of cattle guards in place of gates did not materially increase the burden on Ms. White's servient estate and that Ms. White did not "have the right to insist upon the usage of gates in addition to or in lieu of cattle guards."

[¶5]  Ms. White appealed the district court's decision, and we reversed and remanded for a trial.  *White,* ¶18.  We over-

ruled *Van Raden,* and its progeny to the extent they stood for the proposition that, as a matter of law, cattle guards may be substituted for gates and do not place an unreasonable burden upon the servient estate. *White,* ¶¶ 11–12. This Court ruled, instead, that the determination of whether a dominant easement owner may place cattle guards on his easement in place of gates is a question of fact which must be determined on a case-by-case basis. *White,* ¶ 12. Consequently, we remanded the case to the district court to determine "[w]hether such gates are reasonably necessary to the servient estate, or constitute an unreasonable inconvenience to the dominant estate[.]" *White,* ¶ 16.

[¶ 6] On remand, the district court held a bench trial. At the conclusion of the trial, it issued its findings of fact, conclusions of law and order pursuant to Wyo. R. Civ. P. 52. The district court found the Allens' use of cattle guards instead of gates did not materially increase the burden on Ms. White's servient estate and permanently restrained Ms. White from placing gates on the easement. Ms. White filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶ 7] We apply the following standard to review a decision rendered by the district court after a bench trial:

"The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Harber v. Jensen,* 2004 WY 104, ¶ 7, 97 P.3d 57, ¶ 7 (Wyo.2004) *quoting, Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, ¶ 7 (Wyo.2003). *See also, Pow-*der *River Ranch, Inc. v. Michelena,* 2005 WY 1, ¶ 8, 103 P.3d 876, ¶ 8 (Wyo.2005).

"[W]e assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law."

*Life Care Centers,* ¶ 7 (citation omitted). The district court's conclusions of law are reviewed *de novo.* *Powder River Ranch, Inc.,* ¶ 8; *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, ¶ 6 (Wyo. 2003).

## DISCUSSION

### A. *Easement Language*

[¶ 8] The relevant language of the Allens' access easement granted the dominant owner the right to "construct, use, control, maintain, improve and repair a road" over the servient estate. The district court interpreted the access language as follows:

1. The inclusion of the word "control" in [t]he [e]asement supports the conclusion that it was the intention of the grantor of [t]he [e]asement to give the owner of the Allen Parcel the right to install cattle guards on the ends of [t]he [e]asement and to insist that the right of passage represented by [t]he [e]asement b[e] an "[o]pen way of pass[age]" unimpeded by gates across [t]he [e]asement.

Ms. White claims that the district court erred by ruling that the term "control" in the easement document justifies the substitution of cattle guards for gates on the easement.

[¶ 9] Under the law of this case, the district court's interpretation of the "control" language was unnecessary. We held in the original *White* decision that the easement language did not, as a matter of law, grant the dominant owners the right to install cattle guards in lieu of gates. *White,* ¶¶ 11–12. Instead, we ruled that "[w]hether such gates are reasonably necessary to the servient es-

tate, or constitute an unreasonable inconvenience to the dominant estate, are questions of fact to be resolved by the fact finder in the light of all the evidence that may be presented by the parties." *White*, ¶ 17. Consequently, the district court's decision on the factual issue of the reasonableness of cattle guards versus gates was dispositive. We, therefore, turn directly to that issue.

### B. *Reasonableness of Dominant Owner's Use of the Easement*

[¶ 10] The district court ruled: "[The Allens] use of cattle guards in lieu of gates does not materially increase the burden on the servient estate held by [Ms. White], however, opening and closing two different gates each time one enters or leaves the dominant estate is quite burdensome and deprives [the Allens] of the essential use of their easement." In support of this ruling, the district court made extensive and detailed findings of fact. The record reveals that that district court's findings of fact were supported by the evidence and were not clearly erroneous.

[¶ 11] Over the years, the parties had disagreed about whether or not the gates should be closed. Ms. White insisted that the gates be closed to prevent her cattle from escaping. She testified that she was subject to incarceration if her cattle escaped to a neighboring subdivision because a restraining order in another matter prohibited her from allowing her cattle to graze on the subdivision lands.

[¶ 12] The evidence does not support Ms. White's claim that the cattle guards materially increased the burden on her servient estate. During periods when the gates were not closed, Ms. White's cattle did not routinely escape over cattle guards. When Ms. White's cattle did escape, it was through the inadequate fences surrounding her property, rather than across the cattle guards. In fact, James Waggoner, Ph.D., an associate professor of animal behavior at the University of Wyoming, testified that, in his opinion, the cattle guards were the strongest part of Ms. White's fencing system.

[¶ 13] We turn now to the other side of the equation—the inconvenience of the gates to the Allens' dominant estate. The record reveals that, when the gates were closed, the process of traversing the easement was quite unwieldly. In order to reach their property, the Allens were required to stop their vehicle at the first cattle guard, walk across the cattle guard, open the gate, walk back across the cattle guard, reenter the vehicle, drive across the cattle guard, exit the vehicle again, and close the gate. The process then had to be repeated at the second cattle guard and gate. Mrs. Allen testified that it was difficult and dangerous to walk across the cattle guard rungs, especially when they were wet or icy. This was especially a problem for the Allens' invitees who were physically handicapped, including Mrs. Allen's parents.

[¶ 14] Furthermore, the Allens feared that the cattle would injure them or their invitees while they were opening and closing the gates. Dr. Waggoner testified that he had observed Ms. White's cattle, and she had an unusually high percentage of bulls in the herd, resulting in more fighting between the males during breeding season. Moreover, her cattle were horned and the horns had not been turned down, further increasing the danger represented by the cattle. Dr. Waggoner testified that the fact that Ms. White's cattle were pets did not minimize the danger, and that people are more likely to be injured by tame animals than wild animals because tame animals are used to being around people and are more inclined to approach them. Thus, Ms. White's insistence that the gates be opened and closed each time the Allens traveled the easement created a danger of falling on the cattle guards and/or being injured by Ms. White's cattle.

[¶ 15] The Allens also presented evidence showing that the gates were inconvenient for delivery people, such as the propane delivery person and the United Parcel Services (UPS) driver. In one instance, a delivery person actually hung a valuable item on the fence rather than go through the hassle of opening and closing the gates. A fireman and emergency medical technician also expressed concern that the gates would hinder the ability of emergency personnel to respond to a crisis.

[¶ 16] The inconvenience of opening and closing the gates each time the Allens traversed the easement was enhanced by Ms. White's inflexibility about the matter. On one occasion, Ms. White called the deputy sheriff and arranged for a citation to be issued to Mrs. Allen, pursuant to Wyo. Stat. Ann. § 6–9–202 (LexisNexis 2003),[1] for failing to close a gate.

[¶ 17] On this record, we must conclude that the district court did not err by ruling that: 1) the cattle guards did not materially increase the burden upon Ms. White's servient estate; and 2) requiring the gates to be closed would be overly burdensome and would deprive the Allens of the essential use of their easement.

## C. *Counterclaim*

[¶ 18] Ms. White claims that the district court erred by dismissing her counterclaim against the Allens. She argues that she should have been allowed to pursue a tort claim for trespass based upon the Allens' misuse of the easement. In resolving this issue, we must review the procedural history of the counterclaims in this case.

[¶ 19] After the Allens filed their declaratory judgment action, Ms. White filed an answer and counterclaim. The original counterclaim stated that the cattle guards increased the burden upon the servient estate and that Ms. White had been damaged by the Allens' failure to close the gates. Ms. White's pretrial memorandum stated that there was a pending issue of law as to whether a person who failed to close gates in violation of § 6–9–202 may be sued in tort for damages. The district court's order on the pretrial conference confirmed that Ms. White maintained a claim for a tortious wrong based upon the Allens' failure to close the gates. The Allens filed a motion for summary judgment on their declaratory judgment claim and a motion to dismiss Ms. White's counterclaim. The district court subsequently entered summary judgment in favor of the Allens and dismissed Ms. White's counterclaim, ruling, as a matter of law, that the cattle guards did not materially increase the burden upon Ms. White's servient estate.

[¶ 20] As we stated earlier in this opinion, this Court reversed the summary judgment in favor of the Allens and remanded for a trial on their declaratory judgment action. With regard to Ms. White's counterclaim, we stated: "White contends that Wyo. Stat. Ann. § 6–9–202 (LexisNexis 2001) creates in her a right to file a tort action against the Allens under the circumstances presented here.... This argument is not supported by cogent argument or pertinent authority and we decline to consider it further." *White,* ¶ 17 (citation omitted). The effect of our ruling was that the district court's dismissal of the original counterclaim was affirmed.

[¶ 21] After the case was remanded for a trial, the district court ordered that the parties file any motions in a timely fashion. Ms. White requested leave to amend her answer to state a counterclaim seeking damages from the Allens because they "exceeded their easement rights and interfered with the reasonable use of [Ms. White's] servient property." The district court entered an order denying Ms. White's motion to amend her answer to assert a counterclaim, stating that the proposed amendment was, in all material respects, the same as the original counterclaim which had been dismissed by the district court. On the day preceding the trial, Ms. White again requested leave to assert a counterclaim. She argued, in essence, that her proposed counterclaim was different than the original counterclaim. The district court disagreed and held that "the dismissal of the counterclaim stands."

[¶ 22] We agree with the district court. The original counterclaim was stated in almost identical terms as the proposed amended counterclaim. While the original counterclaim had evolved to include an argument pertaining to § 6–9–202, there is no question that the dismissal of the original counterclaim and the subsequent affirmation of that decision by this Court finally resolved that

---

1. Wyo. Stat. Ann. § 6–9–202 states:

    A person is guilty of a misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00) if he opens and neglects to close a gate or replace bars in a fence which crosses a private road or a river, stream or ditch.

matter. Furthermore, even if Ms. White had been allowed to proceed with her counterclaim, she ultimately would not have been successful. The district court's findings that the Allens' use of cattle guards instead of gates did not materially increase the burden on her servient estate necessarily means that the Allens did not exceed their easement rights or interfere with Ms. White's reasonable use of her servient property.

### D. Costs and Attorney Fees

[¶ 23] In their final issue, the Allens request that this Court award them their attorneys fees and costs pursuant to W.R.A.P. 10.05 because Ms. White did not present any pertinent authority or cogent argument in her brief. Rule 10.05 states, in pertinent part: "If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case." We acknowledge that Ms. White's *pro se* brief is somewhat unconventional. Nevertheless, she does provide cogent argument and pertinent authority in support of her contentions. We conclude, therefore, that this is not one of those rare circumstances where sanctions under W.R.A.P. 10.05 are appropriate.

[¶ 24] Affirmed.