163 P.3d 1064

**Thomas HUNT and Sherry Hunt, husband and wife, Plaintiffs–Appellees,**

v.

**Phillip L. RICHARDSON and Julia D. Richardson, husband and wife, Defendants–Appellants,**

**Phillip L. Richardson and Julia D. Richardson, husband and wife, Third–Party Plaintiffs–Appellants,**

v.

**Transitional Living Corporation, an Arizona corporation, Third–Party Defendant–Appellee.**

No. 1 CA–CV 06–0624.

Court of Appeals of Arizona, Division 1, Department B.

July 31, 2007.

As Corrected on Denial of Reconsideration Aug. 23, 2007.

Review Denied Jan. 8, 2008.

---

Keller & Hickey By Craig L. Keller, Daryl R. Wilson, Tempe, Attorneys for Plaintiffs–Appellees and Third–Party Defendant Appellee.

Combs Law Group, P.C., By Christopher A. Combs, Tiffany D. Brooks, Adam B. Decker, Phoenix, Attorneys for Defendants–Appellants and Third–Party Plaintiffs–Appellants.

**OPINION**

TIMMER, Judge.

¶ 1 Phillip L. Richardson and Julia D. Richardson appeal from the grant of summary judgment on claims arising out of an access easement on the Richardsons' property. To resolve this appeal, we must decide whether the easement was properly dedicated to public use and, if so, whether the Richardsons raised issues of material fact concerning their ability to lawfully erect a gate blocking access to the easement. We must also determine whether the trial court correctly ruled that the Richardsons' claims for declaratory relief relating to the parties' responsibility for the easement were non-justiciable.

¶ 2 For the reasons that follow, the trial court correctly ruled that the easement was valid and that the Richardsons' request for a declaratory judgment regarding the parties' responsibility for future injuries on the easement was non-justiciable. Because issues of material fact exist pertaining to the Richardsons' ability to erect a gate, and the Richardsons presented a justiciable claim concerning the parties' responsibility for maintaining the easement, however, we affirm in part, reverse in part, and remand for additional proceedings.

**BACKGROUND**

¶ 3 Larry Simpson and John Simpson owned approximately fifteen acres of property ("Parcel 1") located in Wickenburg. On December 13, 2000, Larry and John recorded with the Maricopa County Recorder a survey ("Survey") indicating the existence of a fifty-foot "Non-exclusive perpetual easement for ingress, egress and public utilities" that ran north-south along the western border of Parcel 1 and a thirty-foot easement of the same description that bisected the parcel from the western border to the eastern border, ending at an adjacent parcel of property ("Parcel 2"). (A copy of the survey map is attached as Appendix A to this decision.) On December 19, the Simpsons recorded a document (the "Easement Instrument") granting an "[e]asement for Ingress, Egress, Public and Private Utilities" to the general public as reflected in the Survey. In March 2001, Larry and John sold Parcel 1 to the Richardsons, who had previously viewed the Survey.

¶ 4 After the Richardsons took possession of Parcel 1, they widened and paved the north-south portion of the easement, which had been a dirt road, and constructed a fence alongside at the forty-foot mark. According to the Richardsons, traffic on the road increased thereafter. The Richardsons replaced an older gate existing at the northern end of the road and installed an automated gate.

¶ 5 Aimee Simpson, as general partner of Simpson Cattle Co. Limited Partnership, Larry and his wife, Sharon Simpson, sued the Richardsons on March 17, 2004, for interference with their easement rights due to construction of the fence and gate. These plaintiffs owned properties contiguous to

Parcel 1. The parties eventually filed cross-motions for summary judgment, and the trial court ruled as a matter of law on April 6, 2005, that the easement was valid but concluded that factual issues remained concerning the necessity of the fence for use of Parcel 1 and whether the fence encumbered the easement (the "2005 Ruling").

¶ 6 Thereafter, Thomas and Sherry Hunt, who had purchased Parcel 2, intervened as plaintiffs in the lawsuit. The Hunts alleged that the Richardsons had interfered with the Hunts' easement rights because the fence and the gate restricted access across the easement. Following an evidentiary hearing, the Hunts obtained a temporary restraining order ("TRO") requiring the Richardsons to leave the gate open during the pendency of the litigation.

¶ 7 Meanwhile, the Richardsons filed a counterclaim against the plaintiffs and a third-party complaint against John Simpson and Transitional Living Corporation ("Transitional Living"). Transitional Living owned other property adjacent to Parcel 1 ("Parcels 3, 4, and 5"). Among other things, the Richardsons challenged the validity of the easement and, alternatively, asked for a judgment declaring that the owners of parcels 2–5 shared responsibility for maintaining the easement and liability for any future injuries suffered due to poor maintenance. Following cross-motions for summary judgment, the trial court again ruled that the easement was valid, entered a permanent injunction requiring removal of the fence and gate, denied declaratory relief to the Richardsons, and awarded attorneys' fees to the Hunts and Transitional Living pursuant to Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) (2003). The court subsequently denied the Richardsons' motion for reconsideration. After entering judgment pursuant to Arizona Rule of Civil Procedure 54(b), this appeal followed.[1]

¶ 8 We review de novo the entry of summary judgment, viewing the evidence in the light most favorable to the Richardsons as the non-prevailing parties. *L. Harvey Con-*

crete, Inc. v. Agro Constr. & Supply Co., 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). The court properly entered summary judgment for the Hunts and Transitional Living if no genuine issues of material fact existed, and they were entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

## DISCUSSION

### I. Validity of easement

¶ 9 The Richardsons first argue the trial court erred by ruling as a matter of law that the easement was valid because (A) the Easement Instrument failed to comply with the requirements applicable to deeds, and (B) the easement did not constitute a common law dedication to the public. We address each contention in turn.

### A. Deed requirements

¶ 10 The Richardsons contend the Easement Instrument was invalid as it failed to comply with two requirements applicable to property deeds: the existence of a non-fictitious grantee and valid delivery. The underlying premise of the Richardsons' contention is that the requirements for deeding title to real property must be satisfied in order to expressly grant an easement. We reject this premise.

¶ 11 *Scruby v. Vintage Grapevine, Inc.,* 37 Cal.App.4th 697, 43 Cal.Rptr.2d 810 (1995), which the Richardsons cite to support their argument, merely noted that when construing the language of an express grant of an easement, the court should follow rules applicable to construing the language of property deeds. *Id.* at 702, 43 Cal.Rptr.2d 810. That court did not hold that formal requirements for transferring title to property must be met in order to grant an easement. Indeed, as we explain, *see infra* ¶¶ 12–13, it is not necessary to follow such requirements when making a common law dedication of an easement to the public. For this reason alone, we reject the Richardsons' argument without ad-

---

**1.** Claims remain pending between the Richardsons and the Simpson parties, who are not parties to this appeal.

dressing whether the Easement Instrument met the requirements for a property deed.

## B. Common law dedication

¶ 12 Under the common law, an owner can dedicate real property to a proper public use. *Pleak v. Entrada Property Owners' Ass'n*, 207 Ariz. 418, 421, ¶ 8, 87 P.3d 831, 834 (2004) (citing Restatement (Third) of Property: Servitudes ("Restatement") § 2.18(1) (2000) ). The dedication allows the public to acquire an easement to use the property for specified purposes while fee title remains with the party making the dedication. *Pleak*, 207 Ariz. at 421, ¶ 8, 87 P.3d at 834. It is well settled that roadway easements for public use may be created by common law dedication. *Id.* at 421, ¶ 9, 87 P.3d at 834.

¶ 13 To be effective, the dedication must include an offer by the landowner to dedicate and acceptance by the general public. *Id.* at 423–24, ¶ 21, 87 P.3d at 836–37. No magic words are required to dedicate land to public use; any full demonstration of the donor's intent to make the dedication is sufficient. *Id.* at 424, ¶ 21, 87 P.3d at 837.

¶ 14 The Richardsons do not dispute that a valid offer to dedicate was made. Rather, they contend that neither the Town of Wickenburg nor any other governmental entity accepted the dedication, as required by law. The Richardsons point out that the Town expressly rejected the dedication by expressing its lack of interest in using or maintaining the easement. The Hunts and Transitional Living respond that, as set forth in the supreme court's decision in *Pleak*, it is unnecessary for a governmental entity to formally accept a dedication in order to validate that dedication. We agree with the Hunts and Transitional Living.

¶ 15 In *Pleak*, owners of the servient estate burdened by an easement argued that an offer to dedicate a roadway and utility easement for public use could not be accepted by the general public absent use by the general public. *Id.* at 424, ¶ 22, 87

P.3d at 837. The supreme court disagreed, holding that the principles applicable to common law dedications of parks apply to common law dedications of roadway easements. *Id.* at 424, 425, ¶¶ 23, 26, 87 P.3d at 837, 838. Thus, a "sale of lots referencing a recorded plat containing the dedication constitutes an 'immediate and irrevocable' dedication." *Id.* at 424, ¶ 23, 87 P.3d at 837 (citing *County of Yuma v. Leidendeker*, 81 Ariz. 208, 213, 303 P.2d 531, 535 (1956)). It is undisputed that the Richardsons, Hunts, and Transitional Living purchased their properties with reference to the Survey, thus constituting sufficient acceptance of the common law dedication.[2] Consequently, the lack of a governmental entity's acceptance of the dedication is meaningless.

¶ 16 The Richardsons argue *Pleak* does not apply because that case involved a subdivision, which is a heavily regulated land use planning tool, and this case involves split parcels. They reason that application of *Pleak* to non-subdivision cases would "quickly lead to chaos" as lot splits would lead to a "web of small roads" that do not follow a general plan. The Richardsons do not cite any authority for this proposition, and we do not discern any. Indeed, in rejecting the servient estate owner's argument to treat dedications of roadways differently than dedications of parks, *Pleak* endorsed uniform treatment of common law dedications. *Id.* at 425, ¶ 26, 87 P.3d at 838 ("The better approach is to treat acceptance of common law dedications of areas for public use consistently, whether they involve a park, a road, a public plaza, or some other public space."). This reasoning is applicable here, and no reason exists to refrain from applying *Pleak* merely because this case does not involve a subdivision.

¶ 17 The Richardsons next contend the dedication was ineffective because it does not serve a "proper public use," *id.* at 421, ¶ 8, 87 P.3d at 834, in light of its use by travelers to a finite number of properties. They rely on *City of Scottsdale v. Mocho*, 8 Ariz.App. 146, 444 P.2d 437 (1968), but that

---

**2.** The Hunts and Transitional Living further contend they relied on the Easement Instrument

prior to making their purchases.

case is distinguishable. The primary issue in *Mocho* was whether recordation of a commercial property plat with the words, "Reserved for Parking Area" printed on one tract constituted a statutory or common law dedication of the tract for public use as a parking lot. *Id.* at 8 Ariz.App. at 148, 444 P.2d at 439. The court concluded that the evidence supported the trial court's ruling that the lot owner did not intend to dedicate the tract for public use as a parking lot but instead intended the notation to merely mark the area to be used by tenants' customers for parking—a private purpose. *Id.* at 150–51, 444 P.2d at 441–42. Significantly, the court reasoned as follows:

> We do not feel that the usage contemplated of the property involved was a proper public use. The Arizona Supreme Court has not held that a parking lot is a proper subject of dedication. The Court has found a dedication only in cases involving either a park or a street. A park is, by its very nature, a public place, wherein all segments of the general public are expected to be able to use the same. So, too, is a street. A parking lot, however, can be owned by the public or private individuals.

*Id.* at 150, 444 P.2d at 441. Here, the easement consists of a roadway which, according to *Mocho*, by its very nature invites public use unless the dedicator's intent was otherwise. *Id.* Thus, we do not find *Mocho* useful to our analysis.

¶ 18 In effect, the Richardsons seek to hinge the effectiveness of a common law dedication on the amount of public usage; a notion explicitly rejected by *Pleak*. 207 Ariz. at 425, ¶ 26 and n. 4, 87 P.3d at 838 and n. 4

("[servient estate owner's] proposed rule, which would require proof of actual use by the public before finding an effective dedication of a common law roadway easement, would inevitably result in detailed case-by-case inquiries regarding whether and how the public had used a particular roadway. This would inject uncertainty into property law, where predictability is paramount."). Under *Pleak*, it was enough that some members of the public, including those residing nearby, used the road. *Id.* For this reason, we reject the Richardsons' contention.[3]

¶ 19 In summary, we hold that a party wishing to make a common law dedication of an easement to public use need not satisfy requirements for deeding fee title to real property. The landowner need only make an offer to dedicate, which the general public accepts. It is unnecessary for a government entity to formally accept such a dedication in order to validate it. A sale of property with reference to a recorded plat containing the dedication is sufficient to accept the dedication. Finally, whether such an easement serves a limited number of the public does not diminish any proper public purpose served by the easement. Applying these principles to the facts of this case, the trial court properly ruled that the easement is valid.

## II. Erection of the gate

¶ 20 The Richardsons next argue the trial court erred by granting summary judgment for the Hunts on their claim that the gate unreasonably interfered with rights of ingress and egress across the easement.[4]

---

3. In rejecting this contention, the trial court also applied the law-of-the-case doctrine to conclude that the 2005 Ruling, which rejected the Richardsons' arguments addressed at ¶¶ 10–11 *supra*, precluded the Richardsons' arguments concerning common law dedications, which they presented in a second motion for summary judgment. We need not decide whether the trial court committed error in this manner, as the Richardsons contend. First, any error was harmless as the court considered the Richardsons' new arguments but concluded that the easement remained valid. Thus, the Richardsons' substantial rights were not infringed. Ariz. R. Civ. P. 61; *City of Tucson v. LaForge*, 8 Ariz.App. 413, 418, 446 P.2d 692, 697 (1968). Second, in light of our rejection of the Richard-

sons' arguments concerning common law dedications, whether the court correctly applied the law-of-the-case doctrine is moot.

4. In a heading, the Richardsons also challenge the court's ruling that the fence erected at the forty-foot mark of the easement unreasonably interfered with the rights of ingress and egress. As the Hunts and Transitional Living point out, however, the Richardsons fail to present any arguments concerning the fence. Accordingly, we deem any arguments concerning the fence waived. *Phelps Dodge Corp. v. Arizona Elec. Power Co-op., Inc.*, 207 Ariz. 95, 122, ¶ 117, 83 P.3d 573, 600 (App.2004).

According to the Richardsons, questions of material fact precluded summary judgment on this claim. The Hunts respond that summary judgment was warranted as the gate interfered with the right of ingress and egress as a matter of law.

¶ 21 Unless barred by the terms of the easement, the servient estate owner "is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." Restatement § 4.9. If the easement does not detail the manner in which the easement is to be used, it is assumed the servient estate owner and parties with rights to use the easement will "exercise their respective rights and privileges in a spirit of mutual accommodation." *Id.* at, cmt. a. Perhaps for this reason, courts that have considered whether a servient estate owner is entitled to burden an easement by erecting improvements, such as fences and gates, have employed a test that first examines the terms of the easement and then, assuming the easement terms are not preclusive, balances the needs of the parties. *Id.* at cmt. b ("In resolving conflicts among the parties to servitudes, the public policy favoring socially productive use of land generally leads to striking a balance that maximizes the aggregate utility of the servitude and the servient estate.").

¶ 22 The first inquiry by a court considering whether an improvement is permissible is whether the terms of the easement bar the proposed improvement. The servient estate owner has no right to improve an easement if construction of that improvement would be inconsistent with the terms of an easement. *Squaw Peak Community Covenant Church of Phoenix v. Anozira Dev. Inc.*, 149 Ariz. 409, 412, 719 P.2d 295, 298 (App.1986); *Gamburg v. Cooper*, 131 Ariz. 545, 546, 642 P.2d 890, 891 (App.1982). This is so even if the improvement would not unreasonably interfere with the present use of the dominant estate, which enjoys use of the easement. *Squaw Peak,* 149 Ariz. at 412, 719 P.2d at 298. Thus, in *Squaw Peak,* we held that the servient estate owner was not

entitled to install curbs across a seven-foot strip of an express access easement forty feet in width because it would obstruct the right-of-way for ingress and egress over the entire easement. 149 Ariz. at 413, 719 P.2d at 299 ("The servient owner has no right to place permanent obstructions in the described easement area that would prevent the dominant tenement owner from free passing over any part of the easement . . . ." (quoting *Hoff v. Scott,* 453 So.2d 224, 226 (Fla.App.1984)) ).

¶ 23 Assuming the terms of the easement do not preclude construction of an improvement, the court must consider and balance the parties' interests. Restatement § 4.9, Reporter's Note. In *Gamburg,* 131 Ariz. at 546, 642 P.2d at 891, the trial court found that a servient estate owner was not entitled to erect gates across an access easement. On appeal, because the appellants had failed to provide trial transcripts, this court presumed the evidence supported the trial court's judgment and therefore affirmed. *Id.* at 546–47, 642 P.2d at 891–92. In doing so, this court held that absent an express or implied prohibition, a servient estate owner may erect a gate across an easement if the gate (1) is "necessary for the use of the servient estate," and (2) does not constitute an "unreasonable interference with the right of passage." *Id.* at 546, 642 P.2d at 891 (citing *Jordan v. Guinn,* 253 Ark. 315, 485 S.W.2d 715 (1972)); see also *Squaw Peak,* 149 Ariz. at 414, 719 P.2d at 300 (applying *Gamburg* in alternative).[5] The answers to these inquiries are ordinarily questions of fact, dependent upon the circumstances of the particular case. *Gamburg,* 131 Ariz. at 546, 642 P.2d at 891; *White v. Allen,* 65 P.3d 395, 400, ¶ 16 (Wyo.2003) ("Whether such gates are reasonably necessary to the servient estate, or constitute an unreasonable inconvenience to the dominant estate, are questions of fact to be resolved by the fact finder in the light of all the evidence that may be presented by the parties."); *Jordan,* 485 S.W.2d at 720 (to same effect); Restate-

---

**5.** The substance of the inquiry utilized by the *Gamburg* court appears well-accepted by other courts. *See* Daniel E. Feld, Annotation, *Right to* *Maintain Gate or Fence Across Right of Way,* 52 A.L.R.3d 9, § 3 (1973 and Supp.2002) ("Feld") (collecting cases).

ment § 4.9, Reporters Note; 25 Am.Jur.2d *Easements and Licenses* § 88 (May 2007).

¶ 24 In the present case, no party contends the terms of the easement limit the Richardsons' ability to erect a gate. Indeed, the easement refers only to use for ingress, egress, and public utilities and does not provide that the way must remain "open" or use other language precluding erection of a gate. *Cf. White*, 65 P.3d at 399, ¶ 12 ("[U]nless it is expressly stipulated in the grant that the way shall be an open one, or unless a prohibition of gates is implied from the circumstances, the servient owner may maintain a gate across the way if necessary for the use of the servient estate and if the gate does not unreasonably interfere with the right of passage." (quoting *Feld*, § 2[a])). Rather, the dispute before the trial court was the necessity of the gate to the Richardsons' use of their land and the reasonableness of the interference with the right of passage.

¶ 25 The trial court ruled that the Richardsons failed to controvert the affidavits and sworn testimony presented by the Hunts with their cross-motion for summary judgment. Relying only on the statement of facts presented by the Hunts, therefore, the court concluded no admissible evidence showed that the gate was necessary for the Richardsons'[6] use of their property, and the Hunts had demonstrated that the gate unreasonably interfered with use of the easement. The Richardsons challenge this ruling, contending they properly controverted the Hunts' evidence, and that issues of material fact exist concerning the necessity of the gate and the reasonableness of its interference with passage across the easement. The Hunts do not address whether the Richardsons controverted the Hunts' evidence.[7] Instead, they argue the Richardsons' evidence was insufficient to create issues of material fact precluding summary judgment. We therefore examine the evidence to decide whether issues of material fact exist concerning either the necessity of the gate to the Richardsons' use of their property or whether the gate unreasonably interferes with passage along the easement.

## A. Necessity of gate

¶ 26 At the evidentiary hearing held in August 2005 for the application for TRO, the Richardsons presented witnesses who testified that the gate was needed (1) as a secondary barrier to contain the Richardsons' horses should they escape their fenced enclosure, as had occurred previously, and (2) to curtail criminal activity. Additionally, in a prior, unsuccessful motion for summary judgment, the Richardsons submitted their affidavits listing these same reasons for erecting the gate.

¶ 27 The Hunts assert this evidence is insufficient to create an issue of fact about the necessity of the gate for the Richardsons' use of their property. The Hunts point to Phillip Richardson's testimony that existing fencing at the Richardsons' property permits them to use the horse facilities and house without a gate as demonstrating that the Richardsons had a mere *desire* to erect a gate rather than a *need* for a gate. Furthermore, the Hunts contend less restrictive means than a gate exist to protect the Richardsons' property. Finally, the Hunts cite evidence that the gate is insufficient to contain the horses or criminal activity because a door for pedestrian passage through the gate is frequently left ajar, and the Richardsons' neighborhood is relatively crime-free.

**6.** In its ruling, the trial court stated the evidence did not demonstrate that the gate was necessary for the *Hunts'* use of their property. Because the Hunts had properly stated the inquiry as focusing on the *Richardsons'* use of their property, we assume the trial court misstated the Richardsons' names in this portion of its ruling.

**7.** The Richardsons did not comply with Arizona Rule of Civil Procedure 56(c)(2) by filing a separate statement of facts in opposition to the one filed by the Hunts in support of their cross-motion for summary judgment. Regardless, the Richardsons filed a response to the motion, citing testimony from the evidentiary hearing held on the application for TRO. The trial court was required to consider that evidence in deciding the merits of the Hunts' motion. *State ex rel. Corbin v. Sabel*, 138 Ariz. 253, 256, 674 P.2d 316, 319 (App.1983) (holding that in ruling on summary judgment motion, "[t]he court is required to consider portions of verified pleadings, depositions, answers to interrogatories and admissions on file which are brought to the court's attention by the parties.").

¶ 28 The Hunts' arguments rest on the notion that what is "necessary" to the Richardsons' use of their property must be "essential" to that use. We do not view the term so restrictively. Although no Arizona court has elaborated on what constitutes a "necessary" use to a servient estate,[8] we derive guidance from the Arkansas Supreme Court's decision in *Jordan v. Guinn*, relied on by the *Gamburg* court as authority for the two-part inquiry. *Gamburg*, 131 Ariz. at 546, 642 P.2d at 891. The *Jordan* court considered, among other things, whether the trial court properly ordered the Jordans, servient estate owners, to remove a fence and gate erected over an access easement rightfully used by *Guinn*. 485 S.W.2d at 717. In resolving this issue, the court first stated the two-part inquiry recited in *Gamburg*. *Jordan*, 485 S.W.2d at 719–20 (citing 28 C.J.S. *Easements* § 98(b), p. 781; 25 Am.Jur.2d *Easements and Licenses* § 91). In applying this inquiry, the court reasoned that any obstructions placed across the easement must "be for purposes *appropriate* to the Jordans' use of their own property, not for the purpose of annoying the easement owner or obstructing her in the use of the way." *Id.* at 720 (emphasis added). Other courts have similarly viewed what is "necessary" as something less than "essential." *See, e.g., Dep't of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 13 (Ky.1995) (noting cases hold that "erection or construction of gates may be necessary to protect the appropriate use and enjoyment of the subservient owner"); *Marsh v. Pullen*, 50 Or.App. 405, 623 P.2d 1078, 1079 (1981) (upholding servient estate owner's placement of speed bumps in easement because placement "reasonable" to use of property); *Merry v. Priest*, 276 Mass. 592, 177 N.E. 673, 674 (1931) (concluding servient estate owner may erect gates if "appropriate" to facilitate use of burdened land and no material interference with easement rights).

¶ 29 We agree with the *Jordan* court that what is "necessary" for use of the servient estate is merely what is "appropriate" to that use, and we reject the Hunts' contention that any improvement of an easement must be "essential" to that use. Adoption of the Hunts' view would be inconsistent with the notion that the grant of an easement transfers only those rights necessary to use the easement. As our supreme court has held:

> The rights of any person having an easement in the land of another are measured and defined by the purpose and character of the easement; and the right to use the land remains in the owner of the fee so far as such right is consistent with the purpose and character of the easement. *The servient estate will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement.*

*Pinkerton v. Pritchard*, 71 Ariz. 117, 125, 223 P.2d 933, 938 (1950) (citations omitted) (emphasis added); *see also Etz v. Mamerow*, 72 Ariz. 228, 231, 233 P.2d 442, 444 (1951) ("The right to possess, to use and to enjoy land upon which an easement is claimed remains in the owner of the fee except in so far as the exercise of such right is inconsistent with the purpose and character of the easement."); *City of Scottsdale v. Thomas*, 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App.1988) ("[T]he owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden." (citation and internal quotation omitted)). Requiring "essential" use would burden the servient estate to a greater extent than contemplated by the parties at the time of the easement. Specifically, servient estate owners would be restricted from making "non-essential" use of their burdened land even if the rights of the easement owners were unaffected. The better approach is to assess whether the improvement is appropriate to use of the servient estate and then balance the need for that improvement against the impact on easement holders. *See Jordan*, 485 S.W.2d at 720 (reasoning that

---

8. In *Squaw Peak*, this court applied the *Gamburg* inquiry in the alternative and stated no evidence existed that the curbs at issue were "essential to the use" of the servient estate. *Squaw Peak*, 149 Ariz. at 414, 719 P.2d at 300. It does not appear, however, that the meaning of the term "necessary" was at issue in that case. We therefore decline to construe that court's word choice as equating the term "necessary" with the term "essential."

reviewing court must be mindful that as extent of easement becomes less specific, the stronger the principle that both owner and possessor of easement must refrain from unreasonably interfering with the rights of the other); Restatement § 4.9, cmt. b.

¶ 30 Bearing the above-principles in mind, we decide that determining whether the gate was "necessary" to the Richardsons' use of their property required the trial court to consider whether the gate was appropriate to the Richardsons' use of their property. The Richardsons cited evidence that the gate was needed to provide a secondary barrier for their horses and to curtail potential criminal activities on their land. If true, the gate was appropriate to the Richardsons' use of their property. Although the Hunts dispute that erection of the gate served the stated purposes, the Richardsons nevertheless raised sufficient issues of material fact concerning this issue, which must be decided by the trier-of-fact.

### B. Unreasonable interference

■ ¶ 31 The Richardsons similarly contend that issues of material fact exist about whether the gate unreasonably interfered with passage over the easement. The Hunts respond the evidence did not overcome a presumption that the gate unreasonably interfered with passage over the easement. We agree with the Richardsons.

■ ¶ 32 First, although the Hunts contend "Arizona law presumes that a gate will unreasonably interfere with the dominant estate's use and enjoyment of an access easement," they do not cite any authority for this statement, and we are not aware of any. Indeed, authority exists that the burden rests with the dominant estate owner to show that a gate poses an unreasonable interference with the easement—a principle hostile to the existence of a presumption of unreasonable interference. *See Craft v. Weakland*, 174 Or.App. 185, 23 P.3d 413, 415 (2001); *White*, 65 P.3d at 400, ¶ 15. Unlocked gates, by their nature, are not the type of immovable structures that presumptively impede passage. *Squaw Peak*, 149 Ariz. at 414, 719 P.2d at 300 ("A gate does not usually restrict or prevent passage in the manner of a per-

manent structure. It may be opened or closed."). For these reasons, we decline to recognize a presumption in favor of such a principle.

¶ 33 Second, evidence in the record supports differing conclusions concerning the reasonableness of interference experienced by the Hunts, their neighbors, and the general public due to the gate. According to evidence adduced at the TRO hearing, the gate, although automatic, could be opened by anyone who pushed a button, caused minimal ingress delay, and caused no egress delay as it opened automatically. Moreover, the Richardsons offered remote control devices to residents of all parcels serviced by the access easement, arguably minimizing any delay experienced by the most frequent travelers across the easement. In contrast, the Hunts presented evidence that they and their invitees were inconvenienced by the delay in the gate's opening, exposed to potential bodily injury due to the need to exit vehicles to operate the gate, prevented from entry when the gate failed to operate, and that visitors, including construction personnel, had difficulties operating the gate.

■ ¶ 34 Neither the trial court nor this court can state as a matter of law whether the gate unreasonably interferes with passage over the easement. Rather, material issues of fact exist regarding this issue, which must be resolved by the trier-of-fact. *Gamburg*, 131 Ariz. at 546, 642 P.2d at 891 ("Whether or not the gates unreasonably interfere with the right of passage depended upon the facts and circumstances of the particular case and is a question of fact for the trier of fact."); Restatement § 4.9, Reporter's Note (stating whether gates unreasonably interfere with use of an easement "depends entirely on the circumstances of the case" and collecting cases to that effect). In assessing reasonableness, the trier-of-fact should consider, among other factors, "the terms of the grant, the intention of the parties as reflected by the circumstances, the nature and situation of the property and the manner in which it has been used and occupied before and after the grant and the location of gates." *Jordan*, 485 S.W.2d at 720.

¶ 35 In summary, we hold that the trial court erred by granting summary judgment for the Hunts on their claim that the gate unreasonably interferes with use of the easement. Issues of material fact exist regarding the necessity of the gate and whether it unreasonably interferes with passage over the easement. For that reason, we reverse that portion of the judgment and remand for additional proceedings.

### III. Declaratory judgment

¶ 36 The Richardsons next argue the trial court erred by entering summary judgment against them on their declaratory judgment claim, which sought a ruling that they, the Hunts, and Transitional Living share pro-rata responsibility for maintaining the easement and for any liability to third parties arising from a failure to do so. The trial court ruled the claim was non-justiciable. The Richardsons contend their claim is justiciable because the Hunts and Transitional Living deny any responsibility for the easement, and a real controversy between the parties therefore exists. The Hunts and Transitional Living respond the claim is not justiciable because the question presented is too abstract and, alternatively, they cannot be responsible for maintaining a public easement.

¶ 37 For a court to grant declaratory judgment, a justiciable controversy must exist. *Original Apartment Movers, Inc. v. Waddell*, 179 Ariz. 419, 420, 880 P.2d 639, 640 (App.1993). A justiciable controversy exists if there is " 'an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party.' " *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10, 13 P.3d 785, 787 (App.2000) (quoting *Samaritan Health Services v. City of Glendale*, 148 Ariz. 394, 395, 714 P.2d 887, 888 (App.1986)). The controversy, however, must be real, not merely theoretical. *Planned Parenthood Ctr. of Tucson, Inc. v. Marks*, 17 Ariz.App. 308, 310, 497 P.2d 534, 536 (1972).

¶ 38 We agree with the trial court that the Richardsons' claim for declaratory relief regarding future liability to third parties for any failure to maintain the easement is non-justiciable. " 'A declaratory relief statute only justifies a declaration of rights upon an existing state of facts, not one upon a state of facts which may or may not arise in the future. Nor will future rights be determined in anticipation of an event that may never happen.' " *Moore v. Bolin*, 70 Ariz. 354, 357, 220 P.2d 850, 852 (1950) (quoting Annotation, *Declaration of Rights or Declaratory Judgments*, 87 A.L.R. 1205 (1933)); *U.S. West Communications, Inc. v. Ariz. Corp. Comm'n*, 198 Ariz. 208, 214–15, ¶ 15, 8 P.3d 396, 402–03 (App.2000) (holding court will not render judgment on situation that may never occur), *vacated on other grounds*, 201 Ariz. 242, 247, ¶ 27, 34 P.3d 351, 356 (2001). Future injuries may not occur due to failed maintenance of the easement. Moreover, at the time such injuries occur, one or all the current parties may no longer own their respective properties. *See Bd. of Supervisors of Maricopa County v. Woodall*, 120 Ariz. 379, 380, 586 P.2d 628, 629 (1978) (concluding justiciable controversy requires existence of parties with "a real interest in the questions to be resolved"). For these reasons, adjudication of this issue must await future injury, an identity of interested parties, and a dispute regarding liability for that injury.

¶ 39 We disagree with the court, however, that the claim concerning maintenance of the easement is non-justiciable. The Richardsons alleged that the Hunts and Transitional Living bear responsibility for maintaining the easement but have refused the Richardsons' demand to contribute towards that maintenance. The Hunts and Transitional Living admitted that allegation. Thus, a real controversy exists based on an existing state of facts between parties with an actual interest in the issue. The claim for declaratory relief is therefore justiciable, and the trial court erred by entering summary judgment against the Richardsons on this basis. We therefore reverse that portion of the judgment and remand for additional proceedings.

### IV. Remaining challenges

¶ 40 The Richardsons also argue the trial court erred by awarding attorneys' fees to

the Hunts and Transitional Living pursuant to A.R.S. § 12–341.01, awarding excessive attorneys' fees, and including an improper legal description in the judgment. In light of our decision today, we need not decide whether an award of attorneys' fees is appropriate. To the extent such an award is appropriate, no party has yet prevailed. For this reason, we vacate the award of attorneys' fees and additionally deny the requests by the Hunts and Transitional Living for an award of attorneys' fees on appeal. Moreover, because we reverse the judgment in part and remand for additional proceedings regarding the ability of the Richardsons to maintain a gate over the easement, the propriety of the legal description used in the judgment is moot.

## CONCLUSION

¶ 41 The trial court correctly ruled that the easement was valid but issues of material fact exist concerning the necessity of the gate and the reasonableness of its interference with passage over the easement. Summary judgment on the interference-with-easement claim was therefore inappropriate as it concerns the gate. We further conclude the Richardsons' declaratory judgment action presented a justiciable claim concerning the parties' responsibility for maintaining the easement but that whether the parties share responsibility for any future injuries incurred on the easement is non-justiciable.

¶ 42 For the foregoing reasons, we affirm that portion of the judgment (1) dismissing the Richardsons' declaratory judgment claim concerning future liability arising from any failure to maintain the easement, and (2) granting relief to the Hunts on their intentional interference with easement claim as it relates to fences erected by the Richardsons within the easement. We reverse the remainder of the judgment, vacate the award of attorneys' fees and costs, and remand for further proceedings. Because the Richardsons are the successful party on appeal, we award them their costs subject to compliance with Rule 21(a), Arizona Rules of Civil Appellate Procedure. A.R.S. § 12–341 (2003); *Henry v. Cook*, 189 Ariz. 42, 44, 938 P.2d 91, 93 (App.1996).

CONCURRING: DONN KESSLER, Presiding Judge, and SHELDON H. WEISBERG, Judge.