**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL PIERCE,
                    *Plaintiff-Appellee*,

v.

DOUGLAS A. DUCEY, in his capacity
as Governor of the State of Arizona,
                    *Defendant-Appellant.*

No. 19-17071

D.C. No.
2:16-cv-01538-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Submitted July 10, 2020*
Seattle, Washington

Filed July 21, 2020

Before: Jacqueline H. Nguyen and Patrick J. Bumatay,
Circuit Judges, and Richard Seeborg,** District Judge.

Per Curiam Opinion

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

** The Honorable Richard Seeborg, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[***]

### Article III Case or Controversy

Holding that the district court lacked jurisdiction, the panel vacated the district court's declaratory judgment interpreting the New-Mexico Enabling Act of 1910 and declaring that even after a 1999 amendment, the Enabling Act continues to require congressional consent to any changes to the Arizona state constitution affecting the investment or distribution of assets in Arizona's land trust for public schools.

The panel held that the plaintiff, an Arizona citizen, lacked Article III standing in light of his stipulation that the only injury particular to him was his individual belief that the state was not obeying federal law in implementing Proposition 123, a constitutional amendment that changed the distribution formula.

The panel further held that even if this case had initially presented a justiciable controversy, that controversy ended when Congress consented to the distribution formula in Proposition 123.

The panel therefore vacated the district court's judgment and remanded with instructions to dismiss.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Anni Foster, Office of the Governor, Phoenix, Arizona; Theodore B. Olson and Matthew D. McGill, Gibson Dunn & Crutcher LLP, Washington, D.C.; Timothy Berg and Emily Ward, Fennemore Craig P.C., Phoenix, Arizona; for Defendant-Appellant.

Andrew S. Jacob, Gordon Rees Scully Mansukhani LLP, Phoenix, Arizona, for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

Arizona Governor Douglas Ducey appeals from the district court's declaratory judgment interpreting the New Mexico-Arizona Enabling Act of 1910 ("Enabling Act"), Pub. L. No. 61-219, 36 Stat. 557. The district court declared that even after a 1999 amendment, the Enabling Act continues to require congressional consent to any changes to the state constitution affecting the investment or distribution of assets in Arizona's land trust for public schools. We agree with the governor that the district court lacked jurisdiction to enter this judgment. Therefore, we vacate and remand with instructions to dismiss.

**I.**

At the time of statehood, Arizona required funds to maintain public schools. To that end, the United States granted the state hundreds of thousands of acres of land and established a "permanent inviolable fund." Enabling Act §§ 24, 25, 27. The Enabling Act required Arizona to hold these lands, and any funds derived from them, in trust.

*Id.* § 28.  The sale of trust assets for any purpose other than public schools would be "deemed a breach of trust."  *Id.*

The Enabling Act originally required the state treasurer to place trust funds in "safe, interest-bearing securities" and permitted only the income from these investments to be expended, Enabling Act §§ 25, 27, 28, lest Arizona be "lured from patient methods . . . in the hope of a speedy prosperity," *Ervien v. United States*, 251 U.S. 41, 48 (1919).  Any disposition of trust assets that did not substantially conform to the Enabling Act's limitations was "null and void." Enabling Act § 28.  The Act further provided that Arizona in its constitution must "consent to . . . the terms and conditions upon which [the land] grants . . . [were] made" and "positively preclude the making [of] any future constitutional amendment" altering these terms and conditions "without the consent of Congress."  *Id.* § 20.

Over time, Congress modified the Enabling Act's restrictions on trust assets to reflect contemporary financial realities.  The Act has always required that trust lands be sold for at least some minimum value: originally "three dollars per acre," *id.* § 28, but after a quarter century "their appraised value."  Act of June 5, 1936, Pub. L. No. 74-658, 49 Stat. 1477, 1478.  Two decades later, Congress allowed Arizona to combine funds from the trust for public schools with funds from other land trusts and invest these monies as the state saw fit, not just in interest-bearing securities.  *See* Act of August 28, 1957, Pub. L. No. 85-180, 71 Stat. 457.

Because Arizona was able to spend all of the income it earned from the trust, the trust's corpus tended to decrease in value over time as a result of inflation.  In 1998, Arizona voters approved amendments to the state constitution to address this problem.  As amended, the Arizona constitution provided that the trust fund would reinvest earnings, interest,

and dividends while paying out annual distributions equivalent to the average real return over the preceding five years. *See* Ariz. Const. art. 10, § 7(F)–(G) (1998). Congress approved these changes the following year by amending the Enabling Act. *See* Arizona Statehood and Enabling Act Amendments of 1999, Pub. L. No. 106-133, 113 Stat. 1682. The amended Act specified that trust funds "be prudently invested on a total rate of return basis" and that "[d]istributions . . . be made as provided in Article 10, Section 7 of the Constitution of the State of Arizona."[1] *Id.* § 2(a).

In 2012, Arizona voters amended the state constitution to suspend the 1998 distribution formula for eight years and replace it with a fixed annual rate of 2.5% of the trust fund's average monthly market value over the preceding five years—regardless of inflation or the fund's actual returns. *See* Ariz. Const. art. 10, § 7(H) (2012). In May 2016, the voters passed Proposition 123, a constitutional amendment making the 2012 change to the distribution formula permanent and, for the next nine years, increasing the rate from 2.5% to 6.9% of the fund's average monthly value over the preceding five years.[2] *See* Ariz. Const. art. 10, § 7(G).

---

[1] The parties dispute whether Congress intended to reference article 10, section 7 of the Arizona Constitution as it existed in 1999 or in its current state, however amended. In other words, did Congress merely approve the specific distribution formula the state adopted in 1998, or did it give the state carte blanche to tinker with the formula without further Congressional approval? We need not reach the merits of this dispute.

[2] Because the fund's nominal return in any given year might prove less than 6.9% of the fund's average monthly value over the preceding five years, the constitutional amendment authorized the legislature to

## II.

The instant litigation commenced the day after the May 2016 election when Michael Pierce, an Arizona citizen, filed a complaint against four state officials and legislators. After obtaining counsel, Pierce amended his complaint, substituting the governor as the defendant and claiming a violation of the Enabling Act.[3]  Other than an award of attorney's fees and costs, the only relief that Pierce sought was an injunction prohibiting Arizona "from implementing the Proposition 123 changes to Article 10, Section 7 of its Constitution unless Congress amends the Enabling Act to authorize or consent to such changes."

The governor moved to dismiss on the grounds that Pierce lacked standing and the Enabling Act did not provide a private right of action in federal court.  After the motion had been pending for over a year, Congress consented to the distributional changes brought about by Proposition 123. *See* Consolidated Appropriations Act of 2018, Pub. L. No. 115-141, 132 Stat 348, 1128.  Three days later, the district court denied the motion to dismiss.  Recognizing that Congress's consent mooted the case regarding "trust fund distributions from this time forward," the district court concluded that the case might still be live as to the past distributions.  The court determined that the changes to the distribution formula beginning in 2012 violated the Enabling

---

temporarily reduce the distribution rate to as low as 2.5% of the fund's average value "to preserve the safety of [its] capital."  Ariz. Const. art. 10, § 7(H).

[3] Pierce also sued the State of Arizona and asserted a claim under 42 U.S.C. § 1983, but the district court dismissed Arizona on Eleventh Amendment grounds, and Pierce acquiesced in the dismissal of his § 1983 claim.

Act and that it would therefore need to determine "whether the past excess trust fund distributions . . . are still remediable or are now validated retroactively and therefore moot also."

Pierce informed the district court that he did not intend to pursue the court's theory.[4]  However, the district court permitted him to amend his complaint to seek forward-looking relief.  Pierce sought to enjoin the governor "from implementing any changes to the Arizona Constitution that affect the investment or distribution of the assets in the School Trust Fund . . . until and unless Congress provides consent to such changes" by amending the Enabling Act. After determining that this issue presented a live controversy, the district court entered a declaratory judgment along the lines of the permanent injunction that Pierce had requested.

## III.

For at least two independent reasons, this case should have been dismissed.

## A.

To begin with, Pierce lacks standing to challenge either past or future changes to the distribution formula.  For a plaintiff to have standing to litigate a case or controversy in federal court, Article III demands that he have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

---

[4] Pierce conceded that Congress's consent to Proposition 123 was retroactive, and his counsel represented that the 2012 changes to the distribution formula did not harm the trust due to the stock market's strong performance between 2012 and 2016.

redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

An "injury in fact" means an invasion of the plaintiff's legally protected interest that, among other things, is "concrete and particularized." *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). To be "concrete," the injury "must actually exist"—an abstract, theoretical concern will not do. *Id.*

Pierce stipulated that his "only alleged harm in this case purportedly arises from his status as a citizen of the State of Arizona." His "allegations of irreparable harms are based solely on [his] personal beliefs that implementation of the 2016 amendments . . . will result in greater distributions from Arizona's public school land trust than the distributions permitted under the 1998 amendments." Aside from these beliefs, he "has not personally suffered and will not suffer any separate, individualized injury (financial or otherwise)."

This stipulation dooms Pierce's standing argument. He admits that the only injury particular to him is his individual belief that the state is not obeying federal law, but "injury to the interest in seeing that the law is obeyed" is not concrete. *FEC v. Akins*, 524 U.S. 11, 24 (1998). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549.

Pierce argues that he suffers a concrete injury when the state violates the Enabling Act because he, like any Arizona citizen, is a beneficiary of the land trust. Even if all Arizona citizens—and not just the schools—are beneficiaries of the trust, Pierce's position does not improve. A trust beneficiary must still have *some* personal financial stake in the outcome

to have standing. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619–21 (2020). Pierce acknowledges that he does not.

## B.

Even if this case had initially presented a justiciable controversy, that controversy ended when Congress consented to the distribution formula in Proposition 123. When "an intervening circumstance . . . at any point during litigation" eliminates the case or controversy required by Article III, "the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

Pierce insists that the dispute remains live, invoking the voluntary cessation exception to mootness. It is true that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," and such a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). But the governor's purportedly unlawful conduct was enforcing a state constitutional provision that Pierce contends violated federal law. The governor has not ceased that conduct at all—he continues to enforce Proposition 123's distribution formula.[5] The only thing to change is that

---

[5] The parties disagree whether the governor or the state treasurer is the state official with authority to implement the distribution formula. We assume for the sake of argument that the governor has such authority, but we leave open the possibility that he does not.

the state constitutional provision now undisputedly accords with the Enabling Act. And that change was brought about by Congress, not the governor. The voluntary cessation doctrine does not apply.

The only remaining controversy is whether, should Arizona again alter the distribution formula, the governor needs Congressional approval to implement the change. This dispute "is not ripe for adjudication [because] it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The governor cannot unilaterally amend the state constitution; he merely executes the laws in existence. *See* Ariz. Const. art. 5, § 4; *id.* art. 21. The "[m]ere possibility" that future legislation will "conflict with federal law is not sufficient for declaratory judgment jurisdiction." *Citizens for Honesty & Integrity in Reg'l Planning. v. County of San Diego*, 399 F.3d 1067, 1068 (9th Cir. 2005).

## C.

The governor argues that the district court also lacked subject matter jurisdiction under 28 U.S.C. § 1331. In *Jones v. Brush*, we held that the Enabling Act "does not give [an Arizona citizen] any power or right of any kind or character," and therefore a suit by a private citizen to remedy a breach of the land trust "[does] not arise under the Constitution or laws of the United States." 143 F.2d 733, 735 (9th Cir. 1944).

Pierce would distinguish *Jones* on the ground that the federal issue there—whether the Enabling Act authorized the state to call certain bonds before their due date—was insubstantial. However, our holding did not turn on the

substantiality of the federal question.  We decided *Jones* based on Congress's clear expectation that only the U.S. Attorney General can bring suit in federal court to remedy a violation of the Enabling Act even though Arizona is free to allow its citizens similar recourse in state court.  *See* Enabling Act § 28; *Jones*, 143 F.2d at 735.

While *Jones* remains good law to the extent it held that the Enabling Act does not create a private right of action in federal court, its characterization of the issue as jurisdictional has been undermined by subsequent Supreme Court precedent.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (explaining that whether a particular plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under [a federal statute]" is an inquiry that normally "does not implicate . . . the court's statutory or constitutional power to adjudicate the case," even though "on occasion" the Supreme Court has "treated it as effectively jurisdictional" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n.*, 535 U.S. 635, 643 (2002))).  We need not resolve this tension, since there are multiple other reasons the district court lacked jurisdiction.

## IV.

The district court adjudicated Pierce's claim absent a case or controversy.  Therefore, we vacate its judgment and remand with instructions to dismiss.

**VACATED and REMANDED.**