NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL PIERCE, *Plaintiff/Appellee,*

*v.*

DOUGLAS A. DUCEY, et al., *Defendants/Appellants.*

No. 1 CA-CV 22-0007
FILED 10-25-2022

Appeal from the Superior Court in Maricopa County
No. CV2018-000108
The Honorable John R. Hannah, Judge

**VACATED AND REMANDED**

COUNSEL

Gordon Rees Scully Mansukhani LLP, Phoenix
By Andrew S. Jacob
*Counsel for Plaintiff/Appellee*

Fennemore Craig, P.C., Phoenix
By Timothy J. Berg, Emily Ward, Taylor Burgoon
*Co-Counsel for Defendants/Appellants Governor Douglas A. Ducey and State of Arizona*

Office of the Governor, Phoenix
By Anni Lori Foster
*Co-Counsel for Defendants/Appellants Governor Douglas A. Ducey and State of Arizona*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann joined.

---

**P A T O N**, Judge:

¶1 Governor Douglas A. Ducey and the State of Arizona (collectively "the State") appeal the entry of declaratory judgment in favor of Michael Pierce, declaring that the Enabling Act of Arizona required congressional consent to any change in the formula for investment and distribution of assets in the School Land Trust Fund ("Fund"). Because the matter was mooted by congressional action, we vacate the judgment of the superior court and remand the matter for dismissal.

## FACTS AND PROCEDURAL HISTORY

¶2 The Enabling Act of Arizona was enacted in 1910 by Congress, and conditioned Arizona's statehood on its acquiescence to "specific directives to the Arizona constitutional convention." John D. Leshy, *The Arizona State Constitution*, 407 (2d ed. 2013); *see also* 36 Stat. 557 ("Enabling Act" or "Act"). We apply the Enabling Act as the fundamental law of Arizona, superior even to the Arizona State Constitution. *Gladden Farms, Inc. v. State*, 129 Ariz. 516, 518 (1981). As relevant here, Arizona adopted conforming provisions related to the use of state lands granted in trust by the federal government to the state. Leshy, *supra* at 299-312; *see also* Ariz. Const. art. 10. These included the establishment of the Fund—a "permanent inviolable fund" derived from the use and sale of land—and the investment of proceeds from land use and sales—which must be used to benefit education in Arizona. 36 Stat. 557, 573-74, §§ 27, 28. The Enabling Act also provided that Arizona could not change the way distributions from the Fund were made or utilized without congressional consent. *Id.* at § 28. Congress has provided such consent on several occasions. *See* Pub. L. No. 115-141, tit. IV, § 401, 132 Stat. 348 (2018); Pub. L. No. 106-133, 113 Stat. 1682 (1999); Pub. L. No. 85-180, 71 Stat. 457 (1957); Pub. L. No. 82-44, 65 Stat. 51 (1951); Pub. L. No. 74-658, 49 Stat. 1477 (1936); Pub. L. No. 70-788, 45 Stat. 1252 (1929); Pub. L. No. 69-570, 44 Stat. 1026 (1927).

¶3 The 1999 amendment to the Enabling Act provided that "[d]istributions from the trust funds shall be made as provided in Article

10, Section 7 of the Constitution of the State of Arizona." Pub. L. No. 106-133, 113 Stat. 1682, § 2(a). In 2012, Arizona voters adopted Proposition 118, which provided that the Fund would distribute 2.5% of its corpus, as opposed to the prior formulation which permitted distribution only of the interest returns on the Fund. Laws 2012, H.C.R. 2056, § 1, Prop. 118, approved election Nov. 6, 2012. No congressional action followed this amendment. In 2016, voters adopted Proposition 123, which provided that the Fund would distribute 6.9% of the "average monthly market value[]" of the Fund over each of the prior five years. Laws 2015, 1st Spec. Sess., H.C.R. 2001, § 1, Prop. 123, approved election May 17, 2016.

¶4　　　　Pierce is a United States citizen and Arizona resident. In 2016, Pierce filed an action in the District Court of Arizona, seeking to enjoin Governor Ducey and the State of Arizona from implementing Proposition 123 because Congress had not consented to the Fund distribution change by amending the Enabling Act, along with other claims. *Pierce v. Ducey*, 2019 WL 4750138 (D. Ariz. 2019) ("Pierce I"). The district court dismissed the State from the action based on its Eleventh Amendment immunity from suit. *See Pierce v. Ducey*, 965 F.3d 1085, 1088, n.3 (9th Cir. 2020) ("Pierce II").

¶5　　　　Pierce initially prevailed at the district court, obtaining declaratory relief, but the Ninth Circuit Court of Appeals vacated the judgment and remanded for dismissal of the federal claim. *See id.* at 1089-91. The court found Pierce lacked Article III standing, and that his claim was mooted by Congress consenting to Proposition 123 by way of stating its consent to the changes in a continuing resolution. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 1128, tit. IV, § 401 (2018) ("Consolidated Appropriations Act"). The Ninth Circuit also found Pierce had no concrete injury stemming from the distribution as an Arizona resident and consequently lacked standing. *Pierce II*, 965 F.3d at 1089.

¶6　　　　While his federal action was pending in 2018, Pierce filed this action in the Maricopa County Superior Court challenging the validity of Proposition 123 as a violation of the Enabling Act and seeking injunctive relief.

¶7　　　　The parties filed opposing motions for summary judgment that were stayed pending resolution of the Ninth Circuit appeal. Upon issuance of the Ninth Circuit's mandate in that case, the superior court granted summary judgment for Pierce, finding that Pierce had standing under Arizona law to maintain the action, but that congressional action mooted Pierce's claims that specific distributions arising from Proposition

123 violated the Act. The court, however, also found that "the fundamental legal question" of "whether the Arizona Statehood and Enabling Act Amendments of 1999 effectively repealed the Enabling Act provision that requires Congressional approval" for changes to distribution formulas was not mooted by congressional action, applying the doctrine of voluntary cessation.

¶8    Following oral argument at which Pierce for the first time asked the superior court for a declaratory judgment, the court requested supplemental briefing as to whether the doctrines of mootness or ripeness barred such a judgment. After further briefing and argument, the court agreed with Pierce and issued a final declaratory judgment setting forth that:

> [T]he Arizona Statehood and Enabling Act Amendments of 1999 . . . do not repeal or impair the Enabling Act requirement of congressional consent to any changes to the Arizona State Constitution that affect the investment or distribution of the assets in [the Fund] . . . until and unless Congress provides consent to such changes . . . .

¶9    The court also awarded Pierce his reasonable attorneys' fees and costs under the private attorney general doctrine.

¶10    The State timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9 and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶11    The State argues that the superior court should have dismissed Pierce's action for essentially the same reasons as the Ninth Circuit—that the controversy Pierce seeks to resolve is moot. We agree.

### I.    Consent by Congress in 2018 mooted any controversy.

¶12    The State acknowledged at oral argument that if we find Pierce's claim moot, we need not determine whether he has standing to bring it. We agree, and therefore decline to address standing. The enactment of the Consolidated Appropriations Act mooted any potential controversy. Although the federal government consented to the Fund distribution formula change in the Consolidated Appropriations Act, the superior court, persuaded by the reasoning of the district court, believed that this consent represented voluntary cessation of illegal activity. *See Pierce I*, 2019 WL 4750138 at *4. This was error.

¶13 While declaratory relief is "designed to afford security and relief against uncertainty with a view to avoiding litigation," it is not available to settle "a mere difference of opinion." *Ariz. St. Bd. of Dirs. for Junior Colleges v. Phx. Union High Sch. Dist. of Maricopa Cnty.*, 102 Ariz. 69, 73 (1967). A justiciable controversy must exist between the parties for declaratory relief to be afforded. *Thomas v. City of Phoenix*, 171 Ariz. 69, 74 (App. 1991). A justiciable controversy exists if there is "an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and the denial of it by the opposing party." *Hunt v. Richardson*, 216 Ariz. 114, 125, ¶ 37 (App. 2007) (quoting *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10 (App. 2000)). "Declaratory relief should be based on an existing state of facts, not facts that may or may not arise in the future." *Thomas*, 171 Ariz. at 74. In other words, "[t]he controversy . . . must be real, not merely theoretical." *Hunt*, 216 Ariz. at 125, ¶ 37.

¶14 A case is moot if an event "ends the underlying controversy and transforms the litigation into 'an abstract question which does not arise upon existing facts or right.'" *Workman v. Verde Wellness Ctr.*, 240 Ariz. 597, 603, ¶ 17 (App. 2016) (quoting *Contempo-Tempe Mobile Home Owners Ass'n. v. Steinert*, 144 Ariz. 227, 229 (App. 1985)). Pierce initially sought injunctive relief, but at the superior court's prompting, he admittedly revised his request to one for declaratory judgment "late in the case," which the superior court granted.

¶15 There are exceptions to the rule that courts do not decide moot questions, and the superior court found that because Governor Ducey had requested and received congressional assent to the change in distribution formula, the case was one of voluntary cessation. *See Pointe Resorts, Inc. v. Culbertson*, 158 Ariz. 137, 141 (1988) ("[U]sually a defendant cannot by its own voluntary conduct 'moot' a case and deprive a court of jurisdiction.") But that is not what happened here. First, voluntary cessation *of the questioned practices* is required for the doctrine to apply. *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486 (App. 1981). In this case, neither the Governor nor the State ceased anything at all; they both continue to administer the Fund as it exists under Proposition 123. We find the Ninth Circuit's analysis in reaching a similar conclusion persuasive. *Pierce II*, 965 F.3d at 1089-90.

¶16 Second, neither the Governor nor the State had any control over whether Congress and the President would consent to the changes upon request, and consequently did not have voluntary control over the change in circumstance that mooted this case. The superior court followed the district court's reasoning, holding that because the Governor is the "sole

official means of communication between" the State and the federal government, the act of seeking consent constitutes voluntary cessation. *See Pierce I*, 2019 WL 4750138 at *5 (citing A.R.S. § 41-101(A)(4)). But the act that mooted the controversy was not the Governor asking Congress for consent—that request did nothing on its own. Congress could have declined to approve Proposition 123, or the President could have vetoed the Consolidated Appropriations Act. Rather than the State changing its course, the change in circumstance was the federal government enacting the Consolidated Appropriations Act, which rendered the purportedly unauthorized action, authorized. Whatever official shine is conferred on gubernatorial communication by Section 41-101, there is no law compelling Congress to act on any matter. Indeed, in terms of legal compulsion, Pierce has the same power the Governor possesses to "obtain" congressional approval of any measure: petitioning Congress for a redress of grievances. *See generally* U.S. Const. amend. I.

**¶17**    More to the point, absent a presently illegal enactment, whether the State plans in the abstract to pass and enforce a future change to distribution formulas is precisely the set of "facts that may or may not arise in the future" that our courts should avoid adjudicating. *Thomas*, 171 Ariz. at 74. Or, as the Ninth Circuit alternatively put it, the dispute over whether the State could legally enforce a future change, "is not ripe for adjudication because it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Pierce II*, 965 F.3d at 1090 (cleaned up). Whether framed as a question of mootness or ripeness, we agree.

**¶18**    Because it was federal, not state, action that altered the legal environment surrounding the Fund, and because a similar circumstance is not guaranteed to arise in the future, the superior court erred by finding that the voluntary cessation exception to mootness applied.

## II.    We do not address the 1999 amendments.

**¶19**    Because we find that the controversy has been mooted, we decline to address whether the superior court substantively erred by finding that the 1999 amendment to the Enabling Act removed the requirement that Congress must consent to changes to Fund distribution formulas. *See* Pub. L. No. 106-133, 113 Stat. 1682.

## III.    We do not award attorneys' fees and costs.

**¶20** Pierce is not the prevailing party, and so we cannot award fees and costs under the private attorney general doctrine. *See Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 8, ¶ 26 (2013).

## CONCLUSION

**¶21** We vacate the judgment of the superior court, including the attorneys' fees and cost award, and remand for dismissal of the action.

